F I L E D
**United States Court of Appeals**
**Tenth Circuit**

**February 24, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DAVID MARLAND LEONARD, JR.,

Defendant-Appellant.

No. 04-6361

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF OKLAHOMA**
**(D.C. NO. CR-03-203-T)**

---

Jenine Jensen, Assistant Federal Public Defender (Raymond P. Moore, Federal Public Defender, with her on the briefs) for Defendant-Appellant.

Randal A. Sengel, Assistant United States Attorney (Robert G. McCampbell, United States Attorney, with him on the brief) for Plaintiff-Appellee.

---

Before **BRISCOE**, **McKAY**, and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

On June 14, 2003, David Leonard, an unlicensed driver, collided head-on with a vehicle driven by Gail Sankadota. Ms. Sankadota's pregnant daughter was killed in the accident and Ms. Sankadota was seriously injured. Mr. Leonard was

charged with two counts of second degree murder and one count of assault resulting in serious bodily injury, in violation of 18 U.S.C. §§ 1111(a), 1153(a), and 113(a)(6), respectively. A jury convicted Mr. Leonard on two counts of the lesser included offense of involuntary manslaughter, and assault resulting in serious bodily injury. On appeal, Mr. Leonard challenges three of the district court's evidentiary rulings. Because we find no error in the district court's rulings, we **AFFIRM** Mr. Leonard's conviction.

## I. Background

At trial, the government presented eyewitness evidence that Mr. Leonard had swerved from the southbound lane into the northbound lane and that Ms. Sankadota swerved to the southbound lane to avoid Mr. Leonard's car. The vehicles collided head-on when Mr. Leonard returned to the southbound lane. At the time of the accident, Mr. Leonard was driving without a license. Blood tests conducted shortly after the accident revealed that Mr. Leonard had consumed Xanax, Valium, Soma, marijuana, and alcohol.

To prove the malice aforethought element of second degree murder, the government introduced evidence of Mr. Leonard's driving record. Prior to trial, Mr. Leonard filed a motion in limine, arguing that admitting his driving record violated Federal Rules of Evidence 403 and 404(b). The district court overruled Mr. Leonard's objections, finding that the driving record was admissible to prove

malice aforethought, a required element of second degree murder. At trial, Mike Bailey, a hearing officer supervisor with the Oklahoma Department of Public Safety, testified that Mr. Leonard last had a valid driver's license in April 1988. Mr. Bailey further testified that Mr. Leonard had received approximately fifteen citations since April 1988. Of the fifteen citations, nine were for driving with a suspended license, two were for failing to appear for traffic citation hearings, and two were for moving violations. Of the two moving violations, one was for illegal lane use, a citation which "is usually associated with a motor vehicle accident." Trial Tr. 243-44.

The government also presented evidence about Mr. Leonard's history of prescription drug use and the side effects of the medications. A pharmacist from Anadarko, Oklahoma testified that he had filled prescriptions for Mr. Leonard since at least 2001. The pharmacist testified that he distributed Xanax and Valium to Mr. Leonard. During the pharmacist's testimony, the government admitted a report of Mr. Leonard's prescription drug history as well as a prescription drug label from November 2003, five months after the accident. The pharmacist testified that the warnings on the label were identical to the warnings that would have been on the label for the prescriptions filled immediately before the accident in June 2003. The pharmacist also testified that he placed warnings on the prescription bottles, filled both before and after the accident, that read:

"May cause drowsiness. Alcohol could intensify this effect. Use caution when operating a car or dangerous machinery." *Id.* at 334.

Although the jury acquitted Mr. Leonard of the two counts of second degree murder, it convicted him of two counts of involuntary manslaughter. He was also found guilty of assault resulting in serious bodily injury. Mr. Leonard now appeals his conviction, claiming that the district court erred in admitting into evidence fifteen years of his driving record, two years of his prescription drug records, and the November 2003 drug labels.

## II. Discussion

A district court has broad discretion to determine the admissibility of evidence, *United States v. Talamante*, 981 F.2d 1153, 1155 (10th Cir. 1992), and we review the district court's ruling for abuse of discretion, *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001). "Under this standard, we will not disturb a trial court's decision unless we 'ha[ve] a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *Talamante*, 981 F.2d at 1155 (quoting *United States v. Ortiz*, 804 F.2d 1161, 1164 n.2 (10th Cir. 1986) (alterations in original)).

*A.    Mr. Leonard's driving record*

The government claims that evidence of Mr. Leonard's driving record was properly offered under Federal Rule of Evidence Rule 404(b) to prove malice

aforethought, a required element of second degree murder. Evidence of prior acts is properly admitted if four requirements are satisfied:

> (1) the evidence is offered for a proper purpose under Fed.R.Evid. 404(b); (2) the evidence is relevant under Fed.R.Evid. 401; (3) the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice under Fed.R.Evid. 403; and (4) the district court, upon request, instructs the jury to consider the evidence only for the purpose for which it was admitted.

*Tan*, 254 F.3d at 1207-08 (citations omitted). Mr. Leonard claims that the government failed to satisfy the second and third requirements. Mr. Leonard's driving record revealed fifteen citations over a fifteen-year period. Nine of those citations were for driving with a suspended license. Mr. Leonard argues that these citations are irrelevant to the issue of whether he acted with malice aforethought. He also contends that even if the evidence was relevant, it was overly prejudicial and should have been excluded under Rule 403.

Evidence is relevant under Rule 401 if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 401 is a liberal standard. *United States v. McVeigh*, 153 F.3d 1166, 1190 (10th Cir. 1998). The rule establishes only a minimal level of probability—the evidence must render the asserted fact of consequence more probable than it would be without the evidence. *Id.*

The government offered evidence of Mr. Leonard's driving record to establish malice aforethought. A defendant acts with malice aforethought when he engages in "conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that the jury is warranted in inferring that [the] defendant was aware of a serious risk of death or serious bodily harm." *United States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000) (internal quotation marks omitted). This element is therefore established if the government shows the defendant "knew that his conduct posed a serious risk of death or harm to himself or others, but did not care." *Tan*, 254 F.3d at 1207.

This Court has held that drunk driving convictions are relevant and admissible to prove malice aforethought in a second degree murder case. *See id.* at 1210-11. In *Tan*, we acknowledged that someone "'who drives a vehicle while under the influence after having been convicted of that offense knows *better than most* that his conduct is not only illegal, but entails a substantial risk of harm to himself and others.'" *Id.* at 1210 (quoting *People v. Brogna*, 248 Cal. Rptr. 761, 766 (Cal. Ct. App. 1988)). Furthermore, based on the number of convictions, "the jury could infer that Defendant does not care about the risk he poses to himself and others since he continues to drink and drive." *Id.* at 1210-11. We believe the same logic applies to Mr. Leonard's extensive record of driving violations.

Mr. Leonard attempts to distinguish this case from *Tan* by arguing that, unlike drunk driving convictions, citations for driving with a suspended license have no tendency to show that he disregarded a known risk that his conduct was dangerous. Mr. Leonard's argument, however, misses the point. Citations for driving with a suspended license, like citations for drunk driving, convey to the malefactor society's considered view that the cited conduct is dangerous. Admittedly, drunk driving is more likely to be dangerous than a single instance of driving with a suspended license. But the requirement of having a license has a serious purpose: to ensure that drivers meet all safety regulations and qualifications. Persistent violations of this requirement betoken a conscious disregard for these considerations. A jury may infer that an individual with a record like Mr. Leonard's "knows better than most" that his conduct is illegal and unsafe, and continues to do so in defiance of that risk. This evidence tends to show, even if only slightly, that Mr. Leonard acted with malice aforethought. Accordingly, it is relevant under Rule 401.

Mr. Leonard also claims that some of the citations were not relevant because they were remote in time. The district court permitted the government to introduce fifteen years of Mr. Leonard's driving record. We find no error in the district court's determination that this information was relevant. The fifteen-year history demonstrated that over a course of many years Mr. Leonard has

-7-

continuously ignored the government's warnings that he should not drive without a license. If the citations were remote in time and unrepresentative of his behavior in recent years, his argument might have more force. But the evidence in this case shows that Mr. Leonard's dangerous history of driving without a license is both longstanding and continuing.

Alternatively, Mr. Leonard argues that the district court should have excluded the evidence under Rule 403. Federal Rule of Evidence 403 provides that relevant evidence "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403. "'Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'" *United States v. Rodriguez*, 192 F.3d 946, 951 (10th Cir. 1999) (quoting *United States v. Roberts*, 88 F.3d 872, 880 (10th Cir. 1996)). Excluding otherwise admissible evidence under Rule 403 "is an extraordinary remedy [that] should be used sparingly." *Id.* at 949 (internal quotation marks omitted).

Mr. Leonard contends that "[t]he jury was bound to be affected by the driving record introduced by the government." Appellant's Opening Br. 14. However, the jury acquitted Mr. Leonard of the second degree murder charge, suggesting that evidence of Mr. Leonard's driving record did not evoke an emotional response and did not prejudice the jury. Furthermore, as compared to drunk driving convictions that courts have admitted under Rule 403, Mr. Leonard's history of driving with a suspended license was not so likely to provoke an emotional response that it should have been excluded. *See Moorhead v. State*, 638 A.2d 52, 55 (Del. 1994); *Brogna*, 248 Cal. Rptr. at 767. The district court therefore did not abuse its discretion in admitting evidence of Mr. Leonard's driving record.

B.    *Mr. Leonard's prescription medication history*

Mr. Leonard also claims that the district court should have ordered redaction of the two-year old prescription medication history and the label from a prescription filled in November 2003, five months after the accident. He claims that the evidence was both irrelevant and unfairly prejudicial. We find no error in the district court's admission of the unredacted evidence.

Blood tested shortly after the accident revealed that Mr. Leonard had consumed numerous prescription drugs, including Xanax and Valium. To establish malice aforethought, the government offered testimony that Mr. Leonard

was aware that one of the side effects of these medications is to cause drowsiness, but that he disregarded that risk. The prescription records were introduced to show that Mr. Leonard had been taking prescription drugs for a significant period of time before the accident, making it more likely that he was aware of the side effects. The records, even from two years before the accident, were therefore relevant to Mr. Leonard's mental state.

The government offered the prescription drug label from November 2003 because the pharmacist's computer system could not retrieve labels from an earlier date. The pharmacist testified that the warnings were identical to those on the prescriptions Mr. Leonard received before the accident. The label was offered to show the warnings affixed to the prescription bottles, not to show that Mr. Leonard continued to take prescription medication after the accident. That the labels contained warnings makes it more probable that Mr. Leonard knew there was a substantial risk associated with driving while medicated, and that he disregarded that risk. Accordingly, the drug label from November 2003 was also relevant.

Mr. Leonard argues that admission of this evidence was unfairly prejudicial under Rule 403 because it likely led to confusion of the issues. However, the evidence was highly probative as to Mr. Leonard's knowledge of the side effects of the medication and Mr. Leonard has not explained how this evidence confused

the issues. We do not understand why knowledge that Mr. Leonard's drug use was by prescription, and therefore lawful, would be prejudicial. The district court has "considerable discretion in performing the Rule 403 balancing test," *Tan*, 254 F.3d at 1211, and we discern no reason to disturb the district court's conclusion.

### III. Conclusion

For the foregoing reasons, we **AFFIRM** Mr. Leonard's conviction.