FILED
United States Court of Appeals
Tenth Circuit

May 6, 2013

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JOHN C. WALSHE,

      Defendant-Appellant.

No. 12-1145
(D.C. No. 1:10-CR-00181-MSK-1)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **BRISCOE**, Chief Judge, **EBEL,** and **TYMKOVICH**, Circuit Judges.

---

John C. Walshe appeals from his conviction on eighteen counts; specifically,

Counts 1-11 (failure to pay taxes withheld from employees) and Counts 12-18 (theft from

an employee benefit plan). He argues (1) the district court erred in excluding evidence

relating to his mental state; (2) the district court erred in the instructions it gave to the

---

     *After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

jury; and (3) the district erred by giving the jury a modified <u>Allen</u> charge.  For the reasons discussed below, we reject each of these arguments and AFFIRM Mr. Walshe's conviction.

## BACKGROUND

In brief, Mr. Walshe owned and operated Finzer Imaging Services ("Finzer").  He was tried by a jury and found guilty on eighteen counts: (1) Counts 1-11, failure to pay taxes withheld from Finzer employees in violation of 26 U.S.C. § 7202; and (2) Counts 12-18, theft from a benefit plan of Finzer employees in violation of 18 U.S.C. § 664.

As is relevant to this appeal, the following three issues arose at trial.  First, the district court excluded certain evidence that the defense sought to introduce at trial.  Specifically, to support the argument that Mr. Walshe had not "willfully" violated his known legal duties, the defense attempted to introduce a letter written by Mr. Walshe to an Internal Revenue Services ("IRS") agent named Victoria Ayers ("Letter").  The Letter was written after Mr. Walshe became the subject of investigation and proposed a "payment plan" on the taxes owed.

The defense argued that the Letter was relevant to the issue of Mr. Walshe's mens rea.  The Government objected on the basis that the Letter was hearsay.  The district court rejected the defense's argument that the Letter fell under the exception for statements demonstrating state of mind, contained in Federal Rule of Evidence 803, and the court therefore excluded the evidence when the defense attempted to introduce it during the cross-examination of Ms. Ayers.  But on redirect, the Government introduced

2

the Letter and the court admitted it. The defense did not ask Ms. Ayers any questions about the Letter.

Additionally, the defense sought to introduce testimony from Mr. Walshe's son, Chris Walshe ("Chris"), regarding Mr. Walshe's purported mental health problems. The Government objected to the testimony on the basis that it was an attempt to present an expert mental health diagnosis, and was therefore improper lay testimony. In response, the court limited the scope of Chris's testimony.

Second, the defense raised certain objections to the jury instructions. Jury Instruction No. 15 instructed the jury that, in reference to the counts for failing to pay withheld taxes (Counts 1-11), the Government must prove three elements, including "that Mr. Walshe acted willfully." Instruction No. 18 defined the term "willfully." The defense objected to the definition of "willfully" being placed in a separate jury instruction, but the court overruled the objection.

Jury Instruction No. 21, which related to counts of theft from an employee benefit plan (Counts 12-18), stated that the Government must prove that Mr. Walshe acted "unlawfully and willfully." Instruction No. 24 defined the phrase "unlawfully and willfully," and also contained additional language. Mr. Walshe objected to Instruction No. 24, arguing that it was inaccurate, but the court overruled the objection.

Third, the defense objected to a modified <u>Allen</u> charge that the court gave the jury when the jury deadlocked on the second set of charges (Counts 12-18, relating to theft from an employee benefit plan). The Government asked the court to provide the jury

3

with a modified <u>Allen</u> charge, as reflected in Tenth Circuit Pattern Jury Instructions, but the defense objected. Thus, the court referred the jury's attention back to Instruction No. 26, which contained much of the same language as the pattern <u>Allen</u> charge. But the court also read to the jury some language from the pattern <u>Allen</u> charge that was not included in Instruction No. 26.

Approximately 53 minutes after receiving these instructions from the court, the jury returned a verdict of guilty on all counts. Subsequently, the court sentenced Mr. Walshe and entered final judgment, and Mr. Walshe timely filed his notice of appeal.

## DISCUSSION

### I. Excluded Evidence

Mr. Walshe claims that the district court committed reversible error when it excluded evidence he believes was relevant to his mental state. Specifically, Mr. Walshe argues that the district court erroneously excluded (1) the Letter Mr. Walshe sent to IRS agent Ayers; (2) testimony of Mr. Walshe's son, Chris, about the cause of "strange conduct on the Defendant's part during the time frames alleged in the charging document," (Aplt. Br. at 10); and (3) "evidence of Mr. Walshe's cooperation with the investigation offered by the Defendant to show his intent," (Aplt. Br. at 10).

### A. Standard of Review

"A district court has broad discretion to determine the admissibility of evidence." <u>United States v. Leonard</u>, 439 F.3d 648, 650 (10th Cir. 2006). Accordingly, "we review the district court's ruling for abuse of discretion," and "we will not disturb a trial court's

4

decision unless we ha[ve] a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." Id. (alterations in original) (internal quotation marks omitted).

**B. There Was No Error in Excluding the Letter, But Even if the District Court Erred in Its Ruling, that Error was Harmless**

During the cross-examination of Ms. Ayers, Mr. Walshe sought to introduce a Letter he sent to IRS agent Ayers. On appeal, Mr. Walshe contends that the district court erred when it excluded the Letter. Mr. Walshe claims that the Letter was relevant to whether he "willfully" failed to pay his taxes. Specifically, Mr. Walshe argues that the Letter's "descr[iption of] a payment plan" reflected his subjective intent to pay the IRS. (Aplt. Br. at 10-11.)

But as the district court noted, on the counts relating to Mr. Walshe's failure to pay taxes, the Government only had to prove that Mr. Walshe "voluntar[ily], intentional[ly] violat[ed] a known legal duty" to pay his taxes when they came due. See Cheek v. United States, 498 U.S. 192, 201 (1991). Thus, the district court properly excluded the Letter on the ground that, as a post hoc offer to "pay later," the Letter was irrelevant.

In addition, even if the district court's decision to exclude the Letter had constituted an abuse of its discretion, any error was undoubtedly harmless. See United States v. Irvin, 682 F.3d 1254, 1263 (10th Cir. 2012) (explaining that reversal is not warranted where error is harmless). Although the district court excluded the Letter when

5

the defense sought to introduce it during the cross-examination of Ms. Ayers, during the redirect examination of Ms. Ayers, the district court admitted the Letter when the Government offered it into evidence. During the redirect examination, the Government acknowledged that the letter "discuss[ed] a repayment plan from [Mr.] Walshe" (ROA Vol. II at 477), which is precisely the "evidence of [Mr. Walshe's] state of mind and intent" for which Mr. Walshe sought to have the Letter introduced (see Aplt. Br. at 11). Accordingly, the jury was not, as Mr. Walshe contends, "forbid[den] . . . to consider [the Letter as] evidence." (See Aplt. Br. at 10 (quoting Cheek, 498 U.S. at 203).)

For the foregoing reasons, we reject Mr. Walshe's argument that the district court erred in excluding the Letter when the defense sought to introduce it during the cross-examination of Ms. Ayers.

**C. The District Court Did Not Err in Limiting the Scope of Chris's Testimony**

Mr. Walshe argues that the district court abused its discretion when it limited the scope of Chris's testimony to his observations about Mr. Walshe's conduct. Specifically, Mr. Walshe claims that it was error for the court to refuse to allow Chris to "attribute[e] [Mr. Walshe's] conduct to any cause." ROA Vol. II at 619. (See Aplt. Br. at 10.)

As a threshold matter, the Government argues that Mr. Walshe's counsel failed to offer sufficient proof as to "precisely what Chris Walshe intended to say about his father's mental-health conditions," and thus that our review is for plain error. (Aple. Br. at 13.) To preserve a claim of error regarding evidence excluded by the court, a party must "inform[] the court of its substance by an offer of proof, unless the substance was

6

apparent from the context." Fed. R. Evid. 103(a)(2). "[M]erely telling the court the content of . . . proposed testimony is not an offer of proof." United States v. Adams, 271 F.3d 1236, 1241 (10th Cir. 2001) (alteration in original) (internal quotation marks omitted). Instead, "to qualify as an adequate offer of proof, the proponent must, first, describe the evidence and what it tends to show and, second, identify the grounds for admitting the evidence." Id. "If the proponent's offer of proof fails this standard, then this court can reverse only in instances of plain error that affected appellant's substantial rights." Id.

Here, Mr. Walshe's counsel made an adequate offer of proof as to the prospective contents of Chris's testimony. Specifically, Mr. Walshe's counsel stated to the district court that he intended to ask Chris "whether Mr. Walshe appeared to have mental health issues; that he was acting strangely and differently than he had acted before and whether those mental health issues appeared to be affecting the way he was making decisions." (ROA Vol. II at 618.) Counsel added, "I think [that] goes to the issue of mens rea and whether Mr. Walshe acted voluntarily and intentionally . . . and fraudulently . . . ." (ROA Vol. II at 617.) Thus, counsel "explain[ed] what [he] expect[ed] [the evidence] to show and the grounds for which the party believes the evidence to be admissible." Polys v. Trans-Colorado Airlines, Inc., 941 F.2d 1404, 1407 (10th Cir. 1991).

Because Mr. Walshe's offer of proof was adequate, we next consider whether the district court abused its discretion in limiting the scope of Christ's testimony. See Leonard, 439 F.3d at 650. Here, we find no such abuse of the district court's discretion.

7

Mr. Walshe correctly points out that "[l]ay opinion of a witness as to a person's sanity is admissible if the witness is sufficiently acquainted with the person involved and has observed his conduct and has personal knowledge regarding the person's unusual, abnormal or bizarre conduct." United States v. Goodman, 633 F.3d 963, 968 (10th Cir. 2011). But in this case, the district court reasonably construed Mr. Walshe's counsel's announcement that he intended to have Chris discuss Mr. Walshe's "mental health issues" as an attempt to have a lay witness testify on a matter about which he had no "special skill or knowledge," see James River Ins. Co. v. Rapid Funding, LLC, 658 F.3d 1207, 1214 (10th Cir. 2011).

Indeed, when asked how his father had acted differently during the timeframe in question, Chris responded, "Well, you know, I been aware of his manic depressive state for a long time, and the cycles started . . . ," (ROA Vol. II at 619 (emphasis added)), before the Government objected. Such testimony would have been improper coming from a lay witness. See James River Ins. Co., at 1214 ("Rule 701 does not permit a lay witness to express an opinion as to matters which are beyond the realm of common experience and which require the special skill and knowledge of an expert witness." (internal quotation marks omitted)).

8

Accordingly, we cannot say that the district court abused its discretion when it refused to allow Chris to testify concerning Mr. Walshe's "mental health issues."[1]

## II. Jury Instructions

### A. Standard of Review

Mr. Walshe argues that the jury instructions regarding the mens rea were "confusing" to the jury. (Aplt. Br. at 19.) "We review de novo the jury instructions as a whole and view them in the context of the entire trial to determine if they accurately state the governing law and provide the jury with an accurate understanding of the relevant legal standards and factual issues in the case." United States v. Bedford, 536 F.3d 1148, 1152 (10th Cir. 2008) (internal quotation marks omitted). We review for abuse of discretion "the district court's decision to give or to refuse a particular jury instruction," as well as "a district court's shaping or phrasing of a particular jury instruction." Id.

As discussed below, Mr. Walshe argues that (A) the district court erred in instructing the jury regarding the requisite mental state for the two crimes, and (B)

---

[1] Mr. Walshe also argues that the district court erroneously excluded "evidence of Mr. Walshe's cooperation with the investigation offered by the Defendant to show his intent." (See Aplt. Br. at 10, 11-12; accord Aplt. Reply Br. at 7.) But Mr. Walshe provides only a single citation to one page in the record and no argument in connection with this claim, so we decline to address it. See Lauck v. Campbell Cnty., 627 F.3d 805, 814 (10th Cir. 2010) ("[T]his court is under no obligation to consider arguments not fully set forth in a party's appellate brief . . . ." (internal quotation marks omitted)). Similarly, Mr. Walshe complains that the Government "does not address the cumulative effect of the [evidentiary] errors" he identifies, but we fail to see where Mr. Walshe advanced this argument in his Opening Brief, and "a party waives those arguments that its opening brief inadequately addresses." Harsco Corp. v. Renner, 475 F.3d 1179, 1190 (10th Cir. 2007).

9

Instruction No. 24 contained language that improperly shifted the burden of proof to Mr. Walshe and confused the jury about the applicable requisite mental state.  We reject each of these arguments.

### B. The District Court Did Not Err in Instructing the Jury Instructions Regarding the Requisite Mental State for the Crimes

Mr. Walshe complains that the jury could have been confused by instructions given by the district court regarding the requisite mental state for the two crimes at issue. Specifically, he objects to the placement of definitions relating to the mental state requirements for the crimes, which are contained in Instruction No. 18 (definition relating to the mental state relevant to Counts 1-11) and Instruction No. 24 (definition relating to the mental state relevant to Counts 12-18).

As background, as to Counts 1-11 (failing to pay taxes withheld from employees in violation of 26 U.S.C. § 7202), Instruction No. 15 explained that, the Government must prove three elements, including that Mr. Walshe acted willfully.  (ROA Vol. II at 862.)  Instruction No. 18 defined the term "willfully" as follows: "To prove that Mr. Walshe acted willfully, the Government must prove that the law imposed a duty on Mr. Walshe; that Mr. Walshe knew of this duty and that he voluntarily and intentionally violated that duty. Negligent conduct is not sufficient to constitute willfulness."  (ROA Vol. II at 862-63.)

As to Counts 12-18 (theft from an employee benefit plan in violation of 18 U.S.C. § 664), Instruction No. 21 explained that, the Government must prove several elements,

including that Mr. Walshe acted "unlawfully and willfully." (ROA Vol. II at 865.) Instruction No. 24 stated: "The phrase 'unlawfully and willfully' together mean than an action was done with a fraudulent intent or a bad purpose or an evil motive rather than by accident or mistake. It means that the person acted knowingly to deprive the plan of its assets and with the intention or purpose to deceive or to cheat." (ROA at 866.)

Mr. Walshe argues that the definition of "willfully" contained in Instruction No. 18 should have instead been placed in Instruction No. 15. But Mr. Walshe does not adequately explain why the definition was confusing when placed in Instruction No. 18, nor does he point to any authority supporting this argument. Mr. Walshe argues that the jury may have been confused by the definitions of "willfully" (Instruction No. 18) and "unlawfully and willfully" (Instruction No. 21). But again, Mr. Walshe does not adequately support this argument. In context, it is clear that the definition of "willfully" contained in Instruction No. 18 applies to the counts which are set out in Instruction No. 15 (Counts 1-11, for failing to pay taxes withheld from employees in violation of 26 U.S.C. § 7202). And it is likewise clear from context that the definition of "unlawfully and willfully" contained in Instruction No. 24 applies to the counts set out in Instruction No. 21 (Counts 12-18, for theft from an employee benefit plan in violation of 18 U.S.C. § 664).

Mr. Walshe has not shown that the jury instructions given by the court inaccurately state the governing law, relevant legal standards, and factual issues in the case. See Bedford, 536 F.3d at 1152. Nor he has not demonstrated that the district court

11

abused its discretion in the shaping or phrasing of any jury instruction. Id. Considering the instructions as a whole, there is no indication that the jury was misled. See United States v. Winchell, 129 F.3d 1093, 1095 (10th Cir. 1997). Accordingly, we reject Mr. Walshe's argument that the court erred in instructing the jury regarding the requisite mental state.

### C. Mr. Walshe Has Not Demonstrated Plain Error Regarding the Language Contained in Instruction No. 24

In arguing that the jury instructions confused the jury about the requisite mental state, Mr. Walshe argues that the second paragraph of Instruction 24—which relates to Counts 12-18 (theft from an employee benefit plan)—contained an inappropriate "burden shifting phrase." (Aplt. Br. at 16.) Mr. Walshe concedes that the defense did not raise this argument below; accordingly, we review for plain error. "Plain error occurs when there is (1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Gonzalez-Huerta, 403 F.3d 727, 732 (10th Cir. 2005). "[A]n error is 'plain' if it is clear or obvious at the time of the appeal." Id.

The second paragraph of Instruction No. 24 states:

> Fraudulent intent is accompanied ordinarily by a desire or with a purpose to bring about some gain or benefit to oneself or to some other person or by a desire or with a purpose to cause a loss to some person. However, the Government does not have to prove that Mr. Walshe knew of his conduct was illegal or that he intended to permanently deprive the plan of its assets.

12

(ROA Vol. II at 866-67 (emphasis added).)  Mr. Walshe contends that the last sentence of the instruction "negated the requisite mental state instructions by telling the jury that the Government did not even need to prove Mr. Walshe knew what he was doing." (Aplt. Br. at 17.) In fact, Mr. Walshe's interpretation misreads the instruction.  The instruction only states that the Government was not required to prove that Mr. Walshe knew his conduct was <u>illegal</u>.  Elsewhere, the jury instructions make clear that the Government had the burden to establish that "Mr. Walshe acted unlawfully and willfully," and that "unlawfully and willfully" meant the Government had to prove that Mr. Walshe acted "with a fraudulent intent or a bad purpose or an evil motive rather than by accident or mistake," and that he acted "knowingly to deprive the plan of its assets and with the intention or purpose to deceive or to cheat." (ROA Vol. II at 865-66.)

In this case, even if the district court committed an error in providing the jury with the second part of Instruction No. 24, Mr. Walshe has not shown that this error was plain. Indeed, he has not cited caselaw establishing the erroneousness of this language or demonstrating that this language impermissibly shifted the burden of proof to Mr. Walshe.  Aside from his conclusory assertions, Mr. Walshe provides no support for his argument that the instruction shifted the burden and confused the jury, particularly in light of the other instructions that were given.  Because any alleged error related to Instruction No. 25 is not "clear or obvious at the time of the appeal," we reject Mr. Walshe's argument that the district court committed plain error.  <u>Gonzalez-Huerta</u>, 403 F.3d at 732.

13

### III. Modified Allen Charge

#### A. Standard of Review

"An Allen charge is a supplemental instruction given to the jury and designed to encourage a divided jury to agree on a verdict." United States v. LaVallee, 439 F.3d 670, 689 (10th Cir. 2006) (internal quotation marks omitted). We "[r]eview[] the Allen charge for an abuse of discretion by the district court." United States v. Cornelius, 696 F.3d 1307, 1321 (10th Cir. 2012). "In this circuit an Allen charge can be given if it is not impermissibly coercive." United States v. Arney, 248 F.3d 984, 987 (10th Cir. 2001) (internal quotation marks omitted). Thus, "[w]e review an Allen charge for coerciveness in its context and under all the circumstances." Id. (internal quotation marks omitted).

#### B. The Allen Charge Was Not Impermissibly Coercive

Mr. Walshe contends that the modified Allen charge given by the court was impermissibly coercive. As background, after partial deliberation, the jury informed the court that it had not been able to reach a decision on Counts 12-18—the counts involving theft from an employee benefit plan. The Government requested that the court provide the jury with the modified Allen charge contained in Tenth Circuit Pattern Jury Instructions. The defense raised objections to the modified Allen charge, including arguments that the charge was essentially contained in Instruction No. 26 and that the charge would have a "coercive effect." (ROA Vol. II at 918-19.) Accordingly, the court decided to refer the jury to Instruction No. 26 and to read a paragraph from the pattern

14

modified <u>Allen</u> charge that was not included in Instruction No. 26. After bringing the jury to the courtroom, the court said the following:

> Let me advise you that it is not uncommon in the course of jury deliberation to believe that you have reached an impasse; but most often, jurors can get past an impasse.
> I will be allowing you to retire again to continue your deliberations. In doing, so I remind you of the provisions in Instruction No. 26. It reads:
> It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement if you can do so without violence to individual judgment. You must each evaluate the evidence for yourself but only after impartially considering it with your fellow jurors.
> In the course of your deliberations, do not hesitate to reexamine your own views and change your opinion if you're convinced it is erroneous. However, do not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

(ROA Vol. II at 922-23.) The court continued by reading to the jury an additional paragraph from the Tenth Circuit pattern <u>Allen</u> charge:

> You should remember that the defendant is presumed innocent and that the Government, not the defendant, has the burden of proof and it must prove the defendant guilty beyond a reasonable doubt. Those of you who believe that the Government has proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the evidence is really convincing enough, given that other members of the jury are not convinced. And those of you who believe that the Government has not proved the defendant guilty beyond a reasonable doubt should stop and ask yourselves if the doubt you have is a reasonable one, given that other members of the jury do not share your doubt. In short, every individual juror should reconsider his or her own views.

(ROA Vol. II at 923.) Before excusing the jury to continue its deliberations, the court concluded by saying the following, which also mirrors the pattern modified <u>Allen</u> charge:

15

Now, what I've just said is not meant to rush or to pressure you into agreeing on a verdict. Take as much time as you need to discuss things. There is no hurry.

I'll ask you now that you retire once again and continue your deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions that I have previously given you.

(ROA Vol. II at 923.)

Approximately 53 minutes after receiving these instructions from the court, the jury returned a verdict of guilty on all counts. Subsequently, the court sentenced Mr. Walshe and entered final judgment, and Mr. Walshe timely filed his notice of appeal.

In determining whether an Allen charge was impermissibly coercive, "[s]ome of the factors we consider . . . include: (1) the language of the instruction, (2) whether the instruction is presented with other instructions, (3) the timing of the instruction, and (4) the length of the jury's subsequent deliberations." Arney, 248 F.3d 988. We will consider each in turn.

**1.  The Language of the Charge**

In considering the language of the Allen charge, "[t]he inquiry in each case is whether the language used by the judge can be said to be coercive, or merely the proper exercise of his common law right and duty to guide and assist the jury toward a fair and impartial verdict." Id. (internal quotation marks omitted). We have held that "the following cautionary language should be incorporated to balance the potential coercive effect of [an Allen] charge." United States v. McElhiney, 275 F.3d 928, 949 (10th Cir.

16

2001). First, "that no juror should relinquish his or her conscientiously held convictions simply to secure a verdict." Id. And second, "that every individual juror should reconsider his or her views, whether in the majority or in the minority." Id.

In this case, the language that the court read from Instruction No. 26 and the pattern modified Allen instruction was not coercive. Instead, it was evenhanded, it emphasized that jurors should not relinquish their conscientiously held beliefs,[2] and it instructed all jurors to reconsider their views.[3] Indeed, the language was very similar to the language contained in Allen charges that this court has upheld in other cases. See, e.g., United States v. Reed, 61 F.3d 803, 805 (10th Cir. 1995). Accordingly, we conclude that the language at issue in this case was not coercive.

## 2. The Timing and Context of the Charge

"In order to temper the potential coercive effect of an Allen charge, this court has recommended that the instruction be incorporated with the other jury instructions—in

---

[2] Mr. Walshe complains that the court omitted language contained in the pattern Allen instruction, "which is designed to maintain individual jurors beliefs and prevent them from caving into pressure." (Aplt. Br. at 21.) But the language the court read from Instruction No. 26 substantially mirrors the omitted language from the pattern Allen instruction. Specifically, Instruction No. 26 informs the jurors: "[D]o not surrender your honest conviction as to the weight or effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." (ROA Vol. II at 922-23.)

[3] Mr. Walshe particularly objects to court's admonition that each juror should "reconsider his or her own views." (Aplt. Reply Br. at 12.) But this argument is foreclosed by the court's holding in McElhiney. 275 F.3d at 949 (holding that courts should include in an Allen charge "that every individual juror should reconsider his or her views, whether in the majority or in the minority").

other words, that it be given as part of the original jury instructions." McElhiney, 275 F.3d at 942. "In this position, the Allen instruction is less likely to be coercive because (1) it does not stand out or receive particular emphasis and (2) it is given before the jury has reached a deadlock." Id. Nonetheless, "the[e] positioning of the instruction does not by itself establish coercion." Id.; see also United States v. McKinney, 822 F.2d 946, 951 (10th Cir.1987) ("[A]lthough it is a preferred rule of procedure that an Allen instruction be given the jury at the same time as other instructions, it is not a per se rule.").

In this case, the context and timing of the modified Allen charge indicate that it was not coercive. Much of the language in the charge was contained in written Instruction No. 26, which the jury received with all of the other jury instructions before trial. Although the court did read additional language from the pattern Allen instruction, it instructed the jury to "continue [its] deliberations with these additional comments in mind to be applied, of course, in conjunction with all of the instructions that I have previously given." (ROA Vol. II at 923.)

Moreover, although the court read a portion of pattern Allen charge for the first time after the jury was deadlocked, in light of the noncoercive language of the instruction, that alone is insufficient to establish that the instruction was coercive. See Reed, 61 F.3d at 804 (rejecting defendant's argument that it was "error for the trial court to give this instruction after the jury had twice announced it could not reach a verdict," because "the Allen charge eventually given was evenhanded; it did not presume that the majority favored a guilty verdict; and it emphasized that no juror was expected to yield a

18

conscientious conviction on the evidence"). Thus, the context and timing of the instruction do not indicate that it was coercive.

### 3. Length of Subsequent Deliberations

We will consider "the length of the jury's subsequent deliberations" as a factor in determining if an <u>Allen</u> charge was coercive. <u>Arney</u>, 248 F.3d 988. But even a relatively short period of deliberation following an <u>Allen</u> charge may not necessarily establish that the charge was coercive. <u>See</u> <u>Reed</u>, 61 F.3d at 804-05.

In this case, after receiving the <u>Allen</u> charge, the jury deliberated for approximately fifty-three minutes before returning a verdict. But in context, this deliberation period does not imply that the jury was coerced. The record indicates that, before it received the <u>Allen</u> charge, the jury had already reached its decision regarding the counts relating to failure to pay withholding tax; thus, it only had to consider the counts relating to theft from an employee benefit plan. And the court specifically instructed the jury that the <u>Allen</u> charge was "not meant to rush or to pressure you into agreeing on a verdict," and the court advised the jury to "[t]ake as much time as you need to discuss things," and that "[t]here is no need to hurry." (ROA Vol. II at 923.)

Thus, the factors in this case do not indicate that the <u>Allen</u> charge given by the court was coercive. Accordingly, we conclude that the court did not abuse its discretion.

19

**CONCLUSION**

We reject each of Mr. Walshe's claims on appeal and AFFIRM his conviction.


ENTERED FOR THE COURT


David M. Ebel
Circuit Judge

20