FILED
United States Court of Appeals
Tenth Circuit

May 6, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

DANIEL S. PRIETO,

      Defendant-Appellant.

No. 13-1313
(D.C. No. 1:12-CR-00503-RBJ-2)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **HOLMES**, **ANDERSON**, and **BALDOCK**, Circuit Judges.

Daniel S. Prieto was charged with knowingly possessing a firearm and

ammunition after having been previously convicted of a crime punishable by more

than one year imprisonment in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

He was found guilty by a jury and sentenced to 100 months in prison. He appeals

from several evidentiary rulings and the district court's advisement concerning his

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously to grant the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

right to testify.  Exercising jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), we affirm.

### *The Arrest*

A person later identified as Mr. Prieto was spotted driving a vehicle through Greeley, Colorado.  In the passenger seat was a man later identified as Saul Galvan. The music coming from the vehicle was so loud that police officer Cody Mason decided to issue a noise violation.  To that end, he pulled up behind the vehicle and put on his emergency lights.  Officer Mason testified that the vehicle did not stop right away; instead, it turned into a private driveway and then a parking lot, and rolled about 200 feet before coming to a stop.  This aroused suspicion.  As Officer Mason explained:  "[W]hen you stop a car, they usually pull over where it's clearly safe to pull over; and this vehicle did not, so it raised my suspicion."  R. Vol. 3 at 253.  He called for back-up assistance.

While waiting for help, Officer Mason approached the driver's side of the vehicle and observed "in the center console in a cup holder, a glass pipe with white residue on it."  *Id*. at 255.  Based on his experience and training, Officer Mason believed that it was "[a] pipe that's used for consuming methamphetamines."  *Id*. In conversing with Mr. Prieto, Officer Mason noticed that his "[e]yes were bloodshot and watery, and his speech was slurred," *id*. at 256, and the focus of the investigation shifted from a noise violation to drugs.

Officer Ken Amick arrived on the scene. Officer Mason wanted to have his dog conduct a drug sniff of the vehicle, which required him to closely observe the dog for any alerts. Because he could not watch the dog and suspects at the same time, Officer Mason told Officer Amick to get the passenger out of the vehicle. The moment Office Amick opened the passenger door, he observed "a black semiautomatic handgun located between the seat of the passenger door as well as the frame of the vehicle." *Id*. at 478-79. When Officer Mason heard him yell "gun," he immediately pulled his weapon, pointed it at Mr. Prieto, and ordered him to put his hands on the steering wheel. He repeated the command twice before Mr. Prieto complied, but not before "[h]e began to slide his hands down the steering wheel." *Id*. at 261.

When Mr. Prieto was removed from the vehicle, Officer Mason "immediately observed a silver-in-color firearm on the floorboard of the . . . vehicle on [the driver's] side." *Id*. at 262. Officer Mason described the location of the weapon as "laying (sic) on the floor board directly below the steering wheel in front of the gas and brake pedals." *Id*. at 264. "It was a fully loaded magazine, and it had a bullet in the chamber." *Id*. He identified the weapon as "a Jimenez model .380 firearm." *Id*. at 282. Officer Amick testified that he also observed the handgun located on the floorboard of the driver's side of the vehicle. Mr. Prieto and the passenger were placed under arrest.

- 3 -

A short time later, Mr. Prieto's mother, Mercedes Prieto, arrived at the scene and was informed that her son and Mr. Galvan had been arrested as felons in possession of guns.[1] Ms. Prieto told law enforcement that she owned both guns, which she identified as .38 and .8 caliber firearms, and simply forgot to tell her son that she had left them in the vehicle. A few minutes later she changed her statement and told law enforcement that she owned only one of the weapons – the gun found on the driver's side of the vehicle.

### *Drugs, Drug Paraphernalia, the Drug Dog, and Galvan's Weapon*

Mr. Prieto argues that no evidence of drugs, drug paraphernalia, the drug dog, and Mr. Galvan's weapon should have been allowed at trial because it was irrelevant or if relevant, it was unfairly prejudicial under Rule 403 of the Federal Rules of Evidence. He argues also that it was not part of the *res gestae*. We disagree.

Prior to trial, Mr. Prieto sought to exclude any evidence related to drugs, drug paraphernalia, or the drug dog. The district court found that this evidence was admissible as "part of the *res gestae*. It's simply part of telling the story of the stop and how it proceeded." *Id*. at 89. Further, it found that the evidence was potentially relevant "to rebut the possible defense that these weapons were put there by somebody else and belonged to somebody else and that [Mr. Prieto] didn't have any idea they were there." *Id*. And despite the fact that it did not find any unfair

---

[1] Mr. Galvan eventually pled guilty to possession of the gun found on the passenger's side of the vehicle.

prejudice, the court held that "if requested[it would] give a limiting instruction to the jury that there are no drug charges and they should not assume that any law was violated . . . because of the presence of the pipe." *Id.* When pressed by counsel to not allow Officer Mason to refer to the paraphernalia as a "meth pipe," the court said that the lawyers should not introduce the term "meth pipe" with a leading question, but it would not require the officer to testify untruthfully. In other words, based on his training and experience, Officer Mason could testify that he observed what he *believed* was "drug paraphernalia containing what appeared to be an illegal substance," but he could not testify definitively that it was *in fact* a "meth pipe." *Id.* at 136.

After the motions deadline, Mr. Prieto again raised the issue of drugs and drug paraphernalia, along with a request to preclude any testimony about the gun found on Mr. Galvan's side of the vehicle. The district court denied the motion. In keeping with its prior ruling, the court found that the gun found on the passenger side of the vehicle was part of the *res gestae*: "It is part of a description of what happened. I will, however, . . . tell the jury that Mr. Prieto has not been charged with possession of the gun that was on Mr. Galvan's side and that should not . . . be held against him." *Id.* at 219.

At trial, the prosecutor asked Officer Mason, based on his experience and training, what he believed the pipe with the white residue to be. He responded: "A pipe that's used for consuming methamphetamines." *Id.* at 255. The district

court overruled the objection, but told the jury that this was not a drug case. A few minutes later Officer Mason referred to a picture of the pipe as "the methamphetamine pipe that I observed." *Id*. at 257. This time the court sustained an objection and told Officer Mason not to say that it *was* a methamphetamine pipe, but only that he *thought* it was. Later, the prosecutor tried to have Officer Mason explain that a drug dog is not deployed until the scene is safe. He asked: "[W]hen are you able to use your dog at a scene that you develop an investigation like in this case?" *Id*. at 387. A confused Officer Mason responded with a question: "For narcotics?" *Id*. The prosecutor responded: "No, not narcotics, when are you able –" *Id*. But before the prosecutor could finish, Mr. Prieto's lawyer objected. The court sustained the objection, admonished the prosecutor, struck the response, and told the jury again that this was not a drug case.

"We review evidentiary rulings for an abuse of discretion." *United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir. 2010). "Under this standard, we will not disturb a trial court's decision unless we ha[ve] a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006) (brackets in original) (internal quotation marks omitted).

We agree with the district court that these acts were admissible as part of the *res gestae* because they were "inextricably intertwined with the charged crime such that a witness's testimony would have been confusing and incomplete without

mention of the prior act." *Ford*, 613 F.3d at 1267 (internal quotation marks omitted). Officer Mason's observation of the pipe explained why he called for back-up. Similarly, it was necessary to explain to the jury the need to remove Mr. Galvan from the vehicle before the drug dog could be deployed. And evidence of the gun on Mr. Galvan's side of the vehicle was necessary to explain why Officer Mason pointed his gun at Mr. Prieto and ordered him to place his hands on the steering wheel. That Mr. Prieto knew that the gun was at his feet is a plausible explanation for why he disobeyed the order.

"Despite its relevance, *res gestae* evidence is nonetheless subject to Rule 403's balancing test: it may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." *Id*. at 1268 (internal quotation marks omitted). "Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008) (internal quotation marks omitted). "Courts are most sensitive to the danger that a defendant will be convicted just because he is a bad man or keeps bad company." *United States v. Sanchez*, 725 F.3d 1243, 1250 (10th Cir. 2013). As such, we "afford[] the district court considerable discretion in performing the Rule 403 balancing test." *Cerno*, 529 F.3d at 935-36 (internal quotation marks omitted).

The district court did not abuse its discretion. First, no witness was allowed to testify that the pipe was in fact a meth pipe or that the white residue was in fact methamphetamine. As such, the jury had no evidence from which it could conclude that Mr. Prieto was a drug user and therefore a bad person. And because the parties stipulated that the other weapon belonged to the passenger, there was no reason for the jury to hold Mr. Prieto accountable for its presence in the vehicle. Second, the jury never heard anything about Mr. Galvan's criminal history so as to present any danger of guilt by association. Instead, all the jury knew was that the weapon found on the passenger side of the vehicle belonged to the passenger – not Mr. Prieto. Last, the district court reminded the jury on several occasions that Mr. Prieto was not charged with any drug crimes, thus lessening the danger of any unfair prejudice.

### *The Prior Felony*

Prior to trial, Mr. Prieto and the government stipulated that he had been previously convicted of a felony punishable by more than one year imprisonment. According to Mr. Prieto, this stipulation precluded any testimony at trial about his status as a felon under *Old Chief v. United States*, 519 U.S. 172 (1997) and Rule 404(b)(1) of the Federal Rules of Evidence, which prohibits, among other things, evidence of a crime to prove a person's bad character. Again, we disagree.

At trial, Mr. Prieto refused to stipulate that it was his voice on a recording of a jailhouse telephone call with his mother. To lay a proper foundation, the government called Mr. Prieto's parole officer to identify the voice. The parole officer testified

- 8 -

that his job was to supervise convicted felons and that Mr. Prieto was one of his supervisees. And during her testimony, Ms. Prieto stated twice that her son was a convicted felon. This testimony did not violate *Old Chief* or Rule 404(b)(1).

*Old Chief* does not preclude reference to the fact that the defendant has a prior felony conviction; instead, it precludes any discussion of the nature and substance of the felony: "In dealing with the specific problem raised by § 922(g)(1) and its prior-conviction element, there can be no question that evidence of the name or nature of the prior offense generally carries a risk of unfair prejudice to the defendant." 519 U.S. at 185; *see also United States v. Wacker*, 72 F.3d 1453, 1472 (10th Cir. 1995) (holding that to avoid the risk of unfair prejudice, the parties should make "use of a redacted record, stipulation, affidavit, or other similar technique whereby the jury is informed only of the *fact* of a prior felony conviction, but not the *nature* or *substance* of the conviction"). However, there was no *Old Chief* violation because neither Mr. Prieto's parole officer nor his mother testified about the nature or the substance of his prior felony conviction.

Also, there was no Rule 404(b)(1) violation. As a general matter, this Rule prohibits the use of crimes, wrongs, or other acts to prove a person's bad character. Although the district court ruled that the government could not introduce evidence that Mr. Prieto's prior felony conviction *involved a gun*, it did not preclude (nor could it have) the government from establishing one of the elements of the crime – a

prior conviction. None of the testimony referred to Mr. Prieto's prior felony as having involved a gun.

### *The Right to Testify*

At the close of the government's case, the district court advised Mr. Prieto about his right to testify. As part of the advisement, the court told Mr. Prieto that if he testified, the government could bring up his prior felony convictions: "They won't be able to go into the details of what happened or what it was all about, just what it was and what the conviction was. But the law permits them to do that to impeach your credibility." R. Vol. 3 at 507. The court further explained that it "would tell the jurors that they cannot consider those prior felonies for any other purpose than whether they may or may not affect your credibility." *Id.* Mr. Prieto asked the court whether this meant that the prosecutor could bring up all of his prior felonies. The court said "yes." Mr. Prieto chose not to testify. Neither the prosecutor nor Mr. Prieto objected to the advisement. In fact, Mr. Prieto's lawyer thanked the court "very much" for giving the "Curtis advisement," although he thought it unnecessary. *Id.* at 511. A Curtis advisement refers to a Colorado Supreme Court case of the same name, *People v. Curtis*, 681 P.2d 504, 514 (Colo. 1984), which explains what "procedural safeguards are necessary to preserve the [defendant's] right to testify," and holds that "if [a defendant] has been convicted of a felony the prosecutor will be entitled to ask him about it and thereby disclose it to the jury." By contrast, Rule 609 of the Federal Rules of Evidence places

restrictions on what felony convictions may be used to impeach the credibility of a witness.

Mr. Prieto argues that he was misled by the district court's advisement because federal law and Colorado law differ in what felonies can be used for impeachment purposes. We do not resolve the issue, because Mr. Prieto's failure to object to the advisement means that we may reverse only if the advisement was plain error and he has not argued any such error. *See United States v. Blechman*, 657 F.3d 1052, 1063 n.12 (10th Cir. 2011) (holding that we will not consider an argument of plain error where the defendant "has neither mentioned the plain-error standard nor made any attempt to show how he can satisfy that standard"). The failure to do so "on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court." *Id*. (internal quotation marks omitted).

### *Conclusion*

The judgment of the district court is affirmed. We deny Mr. Prieto's pro se motion to supplement the opening brief with additional issues. *See United States v. McDermott*, 64 F.3d 1448, 1450 n.1 (10th Cir. 1995) (holding that this court's policy is to "address[] on direct appeal only those issues raised by counsel.").

Entered for the Court

Jerome A. Holmes
Circuit Judge

- 11 -