**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 10, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

TIMOTHY AMOS MERRITT,

    Defendant - Appellant.

No. 18-1146

_____

**Appeal from the United States District Court**
**for the District of Colorado**
**(D.C. No. 1:16-CR-00365-REB-1)**
_____

Meredith B. Esser, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender, with her on the briefs), Denver, Colorado, for Defendant-Appellant.

Marissa R. Miller, Assistant United States Attorney (Jason R. Dunn, United States Attorney, with her on the brief), Denver, Colorado, for Plaintiff-Appellee.
_____

Before **HARTZ**, **MORITZ**, and **EID**, Circuit Judges.
_____

**EID**, Circuit Judge.
_____

On August 3, 2016, while driving within the borders of the Ute Mountain Ute

Reservation, Defendant-Appellant Timothy Merritt crashed into a vehicle containing

a family of three. Merritt was intoxicated at the time of the accident and had been

driving in the wrong lane. Cecil Vijil,[1] a passenger in the other vehicle, died by the time the ambulance arrived. Cecil's wife Sallie Vijil, also a passenger, was seriously injured. Their son Creighton, who was driving, suffered minor injuries.

The government charged Merritt with second-degree murder for the death of Cecil Vijil in violation of 18 U.S.C. §§ 1111(a), (b) and 1153, and assault resulting in serious bodily injury for the injuries sustained by Sallie Vijil, in violation of 18 U.S.C. §§ 113(a)(6) and 1153.[2] *See* ROA Vol. I at 12. At trial, the government introduced evidence of three other drunk-driving incidents involving Merritt: (1) a 2012 arrest for drunk and reckless driving; (2) a 2014 arrest for intoxication; and (3) a November 2016 drunk-driving arrest, which took place *after* the accident that killed Cecil Vijil. Aplt. Br. at 4. The jury convicted Merritt on both counts. Merritt appeals the murder conviction, arguing that the district court should not have allowed testimony about the facts and circumstances of the 2012 and 2014 incidents, and that no evidence concerning the 2016 arrest should have been admitted.

---

[1] On appeal, the government spells the victims' last name as "Vigil," whereas Merritt spells it "Vijil." The record below indicates the government used "Vijil." *See, e.g.*, ROA Vol. I at 80. Accordingly, we refer to the family as Vijil.

[2] Merritt is an Indian and the accident took place on the Ute Mountain Ute Indian Reservation. *See* ROA Vol. I at 12. As such, Merritt was charged under federal law. *See* 18 U.S.C. § 1153 ("Any Indian who commits . . . murder . . . within the Indian country, shall be subject to the same law and penalties as all other persons committing . . . the above offense[], within the exclusive jurisdiction of the United States.").

Exercising our jurisdiction under 28 U.S.C. § 1291, we affirm the conviction. It was within the district court's discretion to admit the facts and circumstances of the 2012 and 2014 incidents, and any error in admitting the 2016 incident was harmless.

## I. FACTUAL BACKGROUND

### A. August 2016 Incident

On the evening of August 3, 2016, the Vijil family was driving down State Highway 41, a stretch of road in Southwest Colorado near the Utah border. Creighton Vijil was driving, and his parents Cecil and Sallie were passengers. *See* ROA Vol. VI at 69–71. Creighton noticed a pair of headlights approaching in the distance. *Id.* at 72. Initially, he was unconcerned, but he soon noticed that the oncoming vehicle was driving in the wrong direction—in *his* own lane. *Id.* Creighton tried to swerve into the other lane to avoid the oncoming vehicle, but the two vehicles collided. *Id.* at 72, 135.

Shortly after the crash, a passing police officer named Heather Tolth spotted the accident and called for backup. *Id.* at 44–46, 73. After checking on the Vijils, Tolth approached Merritt's truck. *Id.* at 48. She "immediately smelled intoxicating liquor" emanating from Merritt's truck. *Id.* Not only were his eyes bloodshot, but she observed that his speech was slurred. *Id.* She testified that Merritt "appeared to be calm" throughout their interaction. *Id.* at 49.

By the time backup arrived, Cecil Vijil was dead. *Id.* at 133–34. One of the newly arrived officers spoke with Merritt and also concluded Merritt was "intoxicated." *Id.* at 153. But Merritt denied he had been drinking and said there

3

was no alcohol in his car. *Id.* at 137. The officer performed a field sobriety test, which Merritt failed. *Id.* at 144–46, 148–49. The officer also observed that Merritt was unable to walk in a straight line and appeared to have difficulty balancing. *Id.* at 152.

The police arrested Merritt for driving under the influence of alcohol. *Id.* at 153. When the officers searched Merritt's truck, they found two empty beer cans behind the driver's seat and a cooler filled with 15 full cans of Coors Light. *Id.* at 154. At trial, a forensic toxicology analyst testified that roughly three and a half hours after the crash, Merritt's blood alcohol level tested at about .19, well above the legal limit of .08. *Id.* at 387. This same expert reported Merritt's blood alcohol level would have been even higher—between .23 and .25—at the time of the crash. *Id.* at 389.

Captain Leander Morris interviewed Merritt the day after the crash. *Id.* at 246. Morris testified that Merritt eventually acknowledged he had consumed eight beers over the course of the afternoon. *Id.* at 251. According to Merritt, his level of intoxication at the time of the accident was only "a 5 on a scale of 1 to 10." Aple. Br. at 4. But Merritt admitted he knew it was wrong to drink and drive. *Id.*

**B. Other Acts Testimony**

Prior to trial, the government notified Merritt it intended to introduce evidence of other incidents in which Merritt had been driving while under the influence of alcohol under Fed. R. Evid. 404(b). Over Merritt's objections, the district court decided to allow testimony about the other incidents. The government introduced

4

testimony regarding three other incidents through the arresting officers for each incident. Their testimony is summarized as follows.

### 1. 2012 DUI and Reckless Driving Arrest

Officer Grant Keams testified about Merritt's 2012 driving-under-the-influence conviction ("DUI"). ROA Vol. VI at 772. Keams was driving on a four-lane highway around noon when he saw Merritt driving southbound in the northbound lane of traffic. *Id.* at 774. Amidst a "high volume of traffic," Merritt's sedan forced vehicles to halt or even pull onto the shoulder in order to avoid Merritt's car. *Id.* at 776–77. Keams turned on his emergency lights and siren, but Merritt did not pull over. *Id.* at 777. Instead, Merritt vomited out the car window and threw an empty beer can out of his car. *Id.* at 777–78. Keams then saw Merritt cut across two lanes of traffic to pull into a gas station. *Id.* at 778–80. As Merritt was pulling into the gas station, another police car pulled in front of Merritt's car, blocking its path. *Id.* at 781–82.

Keams approached Merritt's vehicle and opened the door. *Id.* at 782. Keams observed fresh vomit on Merritt's beard and reported it was pretty clear that Merritt was in an intoxicated state. *Id.* Merritt's eyes were bloodshot and he slurred his speech. *Id.* at 783. Because Merritt was unable to maintain his balance, Keams could not safely administer a field sobriety test. *Id.* at 782–83.

Keams arrested Merritt and a subsequent search of Merritt's car revealed an open can of beer in the center console, two empty beer cans in the back seat, 45 unopened cans of beer, and a 750 ml bottle of vodka that was mostly empty. *Id.* at

5

784–86.  Ultimately, Merritt pleaded guilty to driving under the influence and reckless driving.  *Id.* at 787.

### 2.  2014 Intoxication Arrest

Brett Von Laner, then a security officer at the Ute Mountain Casino, testified about Merritt's 2014 intoxication conviction.  *Id.* at 749.  In March 2014, Laner was called to the travel center near the casino.  *Id.*  When he arrived, Laner saw Merritt's truck parked by a gas pump at the travel center.  *Id.* at 750.  Merritt had just paid for gas and was walking back to his car.  *Id.*  Laner observed that Merritt looked intoxicated, had poor balance, smelled of alcohol, and had bloodshot eyes.  *Id.*  Laner asked whether there was alcohol in the vehicle, and Merritt said no.  *Id.* at 753.  Laner called the police, and the responding officer similarly concluded that Merritt was drunk and thus arrested him.  *Id.* at 754, 763.  After the arrest, officers found an empty beer can in the center console and a six-pack of Bud Light in the car.  *Id.* at 755.  Laner testified that the Ute Mountain Ute Reservation is a dry reservation, so Merritt could not have bought alcohol at the travel center or casino.  *Id.* at 753.  Merritt eventually pleaded guilty to an intoxication charge based on this incident.  *Id.* at 763–64.

### 3.  November 2016 Arrest

Officer Rusty Smith and Lieutenant Gwendolyn Smith testified about Merritt's November 2016 arrest—while he was out on bond for his August 2016 arrest.  Rusty Smith was driving home from work around 1:00 a.m. on November 9, 2016 when he observed Merritt driving at speeds between 50 and 70 miles per hour in a 65 mile per

6

hour zone. *Id.* at 708–09. Merritt was also weaving and drifting over the center line of a two-lane highway. *Id.* at 709. Rusty Smith did not immediately arrest Merritt because he was out of his jurisdiction. *Id.* at 710. Instead, he called the local police for backup. *Id.* But when Rusty Smith saw Merritt come close to swerving over the center line and into the path of an 18-wheeler tractor trailer, he decided to pull the truck over. *Id.* at 710–11.

When Rusty Smith pulled Merritt over, he observed the car's windows were down even though it was a cold night. *Id.* at 711. Merritt denied he had been drinking, but Rusty Smith smelled alcohol and observed that Merritt's speech was slurred and slow. *Id.* at 712. When questioned about his erratic driving, Merritt insisted he "was driving straight the whole time." *Id.* Asked for identification, Merritt first handed Rusty Smith a bank card before eventually handing over his driver's license after prompting. *Id.* at 712–13. Rusty Smith inquired again whether Merritt had been drinking, and Merritt said, "I only had about three beers but I told you I only had two earlier" (even though he had previously denied having any alcohol). *Id.* at 713–14.

Lieutenant Gwendolyn Smith eventually arrived and took over the investigation. *Id.* at 714–15. Like Rusty Smith, Gwendolyn Smith reported smelling alcohol on Merritt and observed that his eyes were red and speech was slurred. *Id.* at 352. She tried to have Merritt stand on one leg and count to test his sobriety, but Merritt could not balance, and Gwendolyn Smith had to steady him. *Id.* at 354–55. Gwendolyn Smith was unable to administer this part of the sobriety test, because she

7

worried Merritt would fall over and injure himself. *Id.* at 355. She ultimately arrested Merritt for driving under the influence, weaving, and disobedience of a lawful order of the court (for violating the conditions of his bond). *Id.* at 357–58.

## II. ANALYSIS

A district court has broad discretion to determine the admissibility of evidence, *United States v. Henthorn*, 864 F.3d 1241, 1248 (10th Cir. 2017), and we review the district court's ruling for abuse of discretion, *United States v. Tan*, 254 F.3d 1204, 1207 (10th Cir. 2001). "Under this standard, we will not disturb a trial court's decision unless we 'ha[ve] a definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'" *United States v. Leonard*, 439 F.3d 648, 650 (10th Cir. 2006) (alterations in original) (citations omitted).

Evidence of crimes, wrongs, or other acts is not admissible "to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But such evidence is permitted, however, "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). Evidence of prior acts is properly admitted if four requirements are satisfied:

> "(1) The evidence must be offered for a *proper purpose* under Rule 404(b); (2) [t]he evidence must be *relevant* under Rule 401; (3) [t]he *probative value* of the evidence must not be substantially outweighed by its potential for unfair prejudice under Rule 403; and (4) [t]he district

8

> court, upon request, must have *instructed the jury* pursuant to Rule 105
> to consider the evidence only for the purpose for which it was
> admitted."

*Henthorn*, 864 F.3d at 1247–48 (citing *Huddleston v. United States*, 485 U.S. 681, 691–92 (1988)).  Only the first and third requirements are at issue here.

## A.  Admissibility of the 2012 and 2014 Incidents

### 1.  Proper Purpose

The first requirement mandates the evidence be offered for a proper purpose under Rule 404(b).  While evidence may not be offered to prove character as a basis for raising the inference that conduct on a particular occasion was in conformity with this character trait, it can be offered for any of the enumerated purposes in Rule 404(b)(2).  Because only one use is forbidden and several permissible uses are identified, we have characterized Rule 404(b) as "illustrative, not exhaustive." *United States v. Brooks*, 736 F.3d 921, 939 (10th Cir. 2013) (quoting *Tan*, 254 F.3d at 1208).  That is, Rule 404(b) admits "all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *Id.*

To obtain a second-degree murder conviction, the government was required to prove Merritt acted with "malice aforethought." *See* 18 U.S.C. § 1111(a).  We have held that malice aforethought may be established by evidence of "conduct which is reckless and wanton, and a gross deviation from a reasonable standard of care, of such a nature that a jury is warranted in inferring that [the] defendant was aware of a serious risk of death or serious bodily harm." *Tan*, 254 F.3d at 1207 (quoting *United*

9

*States v. Wood*, 207 F.3d 1222, 1228 (10th Cir. 2000)) (internal quotation marks omitted).

Because malice aforethought clearly does not extend to mere negligence, the government offered evidence of Merritt's 2012 and 2014 incidents to prove he "knew that his conduct [in the August 2016 incident] posed a serious risk of death or harm to himself or others, but [that he] did not care." *Id.* The district court admitted this evidence to allow the government to prove Merritt's intent: that he acted with malice aforethought when he killed Cecil Vijil. *See* ROA Vol. I at 154–55.

Merritt concedes that "[t]he stated purpose for which the government sought to introduce the [2012 and 2014 convictions] was not improper." Aplt. Br. at 22. Indeed, this purpose has been specifically contemplated by our court and is plainly proper. In *Tan*, we recognized past convictions of drunk driving were "highly probative of malice" for a later drunk driving incident. 254 F.3d at 1211. As we explained, "[o]ne who drives a vehicle while under the influence after having been convicted of that offense knows *better than most* that his conduct is not only illegal, but entails a substantial risk of harm to himself and others." *Id.* at 1210 (quoting *People v. Brogna*, 248 Cal. Rptr. 761, 766 (Cal. App. 1988)) (internal quotation marks omitted). Accordingly, we held that "prior drunk driving convictions offered to prove the malice component of a second degree murder charge resulting from an alcohol related vehicular homicide are offered for a proper purpose under Rule 404(b)." *Id.* at 1211. The prior convictions here are therefore offered for a proper purpose.

10

Instead, Merritt argues the district court "should not have admitted the facts and circumstances of the prior convictions" because they were not relevant to whether or not he was on "notice" concerning the dangers of drunk driving. Aplt. Br. at 24. In response, the government contends the facts and circumstances of these past convictions do indeed reveal Merritt was "more aware of the dangers that he *specifically* pose[d] to others when he dr[ove] drunk." Aple. Br. at 20. We agree with the government.

Nothing in the text of Rule 404(b) supports Merritt's restrictive reading. Rule 404(b)(1) states that "[e]vidence of a crime, wrong, or other act" is not admissible to prove character as a basis for suggesting an inference that conduct on a particular occasion was in conformity with it. *See* Fed. R. Evid. 404(b)(1). The next part of this Rule goes on to qualify that "[t]his evidence," in other words, evidence of crimes, wrongs, or other acts "may be admissible for another purpose." Fed. R. Evid. 404(b)(2). We reject the narrow reading that evidence of crimes, wrongs, or other acts is limited to the fact of a past conviction.

And we have held *any* evidence that is relevant to a proper purpose can be admitted. For this reason, we consider Rule 404(b) "to be an inclusive rule, admitting all evidence of other crimes or acts except that which tends to prove *only* criminal disposition." *Tan*, 254 F.3d at 1208 (quoting *United States v. Van Metre*, 150 F.3d 339, 349 (4th Cir. 1998)) (internal quotation marks omitted).

Most importantly, we find the facts and circumstances of Merritt's 2012 and 2014 convictions help establish that he acted with malice aforethought during his

11

August 2016 accident. From the particular facts and circumstances of these past convictions, the jury was warranted in inferring that Merritt was not merely cognizant of, but clearly aware of, the dangers he posed to others when he drove intoxicated. As such, these facts and circumstances were offered for a proper purpose.

The facts underlying Merritt's 2012 DUI conviction support the inference that he was subsequently aware that his ability to control an automobile becomes seriously impaired when he is intoxicated. At around noon on December 29, 2012, Officer Keams testified he saw a gray sedan traveling southbound in the northbound lane of traffic. Due to the erratic driving of this sedan, several vehicles—including Officer Keams himself—had to stop and in some cases pull onto the shoulder to avoid crashing into Merritt's sedan. But the dangerous driving behavior was not over. After Keams turned on his emergency lights and sirens to no avail, he watched the sedan dart across two lanes of traffic to pull into a gas station. During the timeframe Keams witnessed, Merritt endangered the lives of many people: his own life, his passenger's life, and the people in the cars who had to stop to avoid colliding with Merritt's sedan.

While Merritt's 2014 conviction did not involve driving under the influence— instead revolving around charges of intoxication and a violation of applicable liquor laws—evidence from this arrest was properly offered to similarly prove that Merritt acted with malice aforethought during the August 2016 accident. At the time of his 2014 arrest, security supervisor Laner observed Merritt stumbling back to his truck

12

from one of the gas pumps. What is more, his breath smelled like alcohol, he was slurring his speech, and his eyes were bloodshot. Alarmed, Laner called the police. The responding officer concluded Merritt was intoxicated and placed him under arrest. Not only was there a passenger in Merritt's truck, but a search of the truck revealed an empty beer can in the center console as well as an unopened six-pack of beer. These facts suggest Merritt had been driving in an intoxicated state and intended to continue to do so. If the 2012 DUI had not sufficiently conveyed to Merritt the dangers he posed to others while driving drunk, then he should have been on notice after this second arrest and conviction. In part, that is because these convictions "convey to the malefactor society's considered view that the cited conduct is dangerous." *Leonard*, 439 F.3d at 651.

The district court concluded the similarities between these two convictions and the August 2016 accident "make it less probable that Mr. Merritt's decision to drive while intoxicated in this instance was unwitting or simply a one-off. Instead, they support a logical inference that his choices—and thus his state of mind—exhibited the type of callous indifference indicative of malice." ROA Vol. I at 157–58. In reaching this decision, the district court did not abuse its discretion.

The facts and circumstances of these two convictions demonstrate Merritt must have been aware of at least two propositions prior to his August 2016 arrest: (1) that drinking compromised his ability to safely operate a vehicle and (2) that driving while intoxicated could place others' lives at risk. And in a manner not conveyed by the mere fact that he had two past convictions, the particularized circumstances of

13

these convictions lead to these inferences (offered to prove malice aforethought in the August 2016 accident). Indeed, if the government had *only* been permitted to inform the jury of Merritt's record—stripped of any details—the only inference that arises is an impermissible one: Merritt has a propensity to drive while intoxicated, and he acted in accordance with this character trait when he killed Cecil Vijil. But taken together, the facts and circumstances of these two convictions were relevant to establish that on August 3, 2016, Merritt had grounds to be aware of the risk his drinking and driving while intoxicated presented to others. For example, driving while intoxicated in 2012 forced multiple cars to halt or pull onto the shoulder, lest they risk a head-on collision with Merritt. And his 2014 conviction revealed he may become seriously impaired while under the influence of alcohol. The facts and circumstances of these past convictions were thus properly admitted to establish the element of malice aforethought required for the proof of second-degree murder.

Even some of the additional details from these convictions—Merritt vomiting out the window, his difficulty maintaining his balance while walking, and slurring of speech—have the tendency to convey Merritt's degree of intoxication and his inability to safely operate his vehicle while drinking. A jury could infer from these facts that Merritt is especially aware of the problems and risks associated with drunk driving, yet nevertheless chose to drive drunk again.[3] Further, these facts play

---

[3] Merritt argues his past convictions could not have contributed to his awareness of the risks of drunk driving, because he was so intoxicated that he was not conscious of his actions at the time. *See* Reply Br. at 3–4. This argument is unpersuasive. Even if Merritt was too intoxicated to remember his actions during the

another role: they help rebut Merritt's own argument that habitual drinkers like himself might have better alcohol tolerance and therefore drive safer than others who choose to drink and drive. *See* ROA Vol. VI at 854 (arguing in closing that "[h]abituated drinkers can tolerate alcohol better than others"). Vomiting out the window helps refute Merritt's own contention that habitual drinkers necessarily tolerate alcohol better than others.

Finally, we reject Merritt's characterization of the legal rule that emerges from our decision in *Tan*: "when a driver is convicted of DUI, he is put on notice that society disapproves of drinking and driving, and a person who has been convicted of such activity is more aware than the general public that this conduct puts society at risk." Aplt. Br. at 23. Merritt therefore argues under *Tan*, only the conviction itself is significant because it is the conviction that makes the defendant aware of society's disapproval of drinking and driving. *Id.* But we do not read *Tan* so narrowly. In *Tan*, we allowed evidence of the defendant's prior drunk-driving convictions because:

> "A jury could infer from Defendant's prior drunk driving convictions that he is especially aware of the problems and risks associated with drunk driving. We agree that '[o]ne who drives a vehicle while under the influence after having been convicted of that offense knows *better*

course of the two prior incidents, he would have been made aware of the details during the attendant criminal proceedings (Merritt pleaded guilty both times). *See* ROA Vol. VI at 763–64, 787. Furthermore, we have concluded that "citations for drunk driving, convey to the malefactor society's considered view that the cited conduct is dangerous." *Leonard*, 439 F.3d at 651. ‼

*than most* that his conduct is not only illegal, but entails a substantial risk of harm to himself and others.'"

*Tan*, 254 F.3d at 1210 (quoting *Brogna*, 248 Cal. Rptr. at 766). Thus, the key to the holding in *Tan* was the defendant's awareness of the "problems and risks associated with drunk driving," not simply society's disapproval of drunk driving. Under this rationale, *any* facts relevant to the defendant's awareness of these "problems and risks" are admissible to prove malice.

The mere fact that Merritt had a previous drunk-driving conviction—devoid of any accompanying context—may not convey Merritt acted with the requisite general intent needed on August 3, 2016 to convict him of second-degree murder. But the particularized circumstances of these arrests help establish Merritt knew he could not drive safely when intoxicated, even if perhaps other habitual drinkers could. Such testimony does not run afoul of Rule 404(b).

We hold that to the extent the facts of prior convictions tend to show the defendant's awareness of the dangers posed by drunk driving, those facts are offered for a proper purpose under Rule 404(b). The facts and circumstances of these past convictions were thus properly admitted to establish the element of malice required for the proof of second-degree murder.

## 2. Probative Value Versus Unfair Prejudice

Even if prior acts evidence is offered for a proper purpose under Rule 404(b), however, it still must survive the Rule 403 balancing test to be admitted. *See Tan*, 254 F.3d at 1211. Evidence is excluded under Rule 403 "if its probative value is

16

substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Not only is the exclusion of evidence under Rule 403 "'an extraordinary remedy'" that "'should be used sparingly,'" *Brooks*, 736 F.3d at 940 (quoting *Tan*, 254 F.3d at 1211), but "[t]he district court has considerable discretion in performing the Rule 403 balancing test," *Tan*, 254 F.3d at 1211.

"Evidence is unfairly prejudicial if it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to his guilt or innocence of the crime charged." *Henthorn*, 864 F.3d at 1256 (internal quotation marks and citation omitted). In weighing the probative value of the evidence against the prospects of unfair prejudice, courts must "'give the evidence its maximum reasonable probative force and its minimum reasonable prejudicial value.'" *Id.* (quoting *United States v. Cerno*, 529 F.3d 926, 935 (10th Cir. 2008)). We have counseled that "'it is not enough that the risk of unfair prejudice be greater than the probative value of the evidence; the danger of that prejudice must *substantially* outweigh the evidence's probative value.'" *Id.*

Merritt's argument for excluding the evidence under Rule 403 is not strong enough to overcome these considerable hurdles. He argues the facts and circumstances were "inflammatory" and their presentation encouraged the jury to conduct a "referendum on Mr. Merritt's general character for callousness." Aplt. Br. at 18–19. He points to evidence like Merritt's vomiting and falling down during field

17

sobriety tests as "substantially outweighed by the danger of unfair prejudice." *Id.* at 30–35.

In admitting the challenged evidence, the district court reasoned that "this evidence is not likely to induce the jury to make an emotional decision entirely divorced (i.e., 'wholly apart') from its relevance in establishing malice aforethought." ROA Vol. I at 158–59. The court found the evidence was "highly probative of Mr. Merritt's state of mind," and that any prejudice resulting from the admission of these facts and circumstances would not substantially outweigh the evidence's probative value. *Id.* at 159.

In making his case, Merritt seems to question whether these facts and circumstances possessed much probative value. *See* Aplt. Br. at 30 (stating "[t]he probative value of the evidence, if any, was substantially outweighed by the danger of unfair prejudice."); *see also* Reply Br. at 4 (arguing "there is little probative value to this kind of evidence"). Contrary to Merritt's position, these facts and circumstances are highly probative. Where, as here, the facts and circumstances are used to prove malice, "an element of [second-degree murder] . . . they have significant probative value." *Tan*, 254 F.3d at 1212.

And we have already detailed how the facts and circumstances of Merritt's two past convictions were directly relevant to the government's task in proving he acted with the required general intent to support a second-degree murder conviction for the August 2016 accident. Merritt driving the wrong direction on a busy highway in 2012 could have resulted in numerous deadly accidents, but for other drivers stopping

18

or pulling off onto the shoulder to avoid head-on collisions with Merritt. Facts like Merritt's inability to walk straight after drinking or vomiting out the window similarly support an inference that Merritt was aware his ability to safely operate a vehicle while driving drunk was gravely compromised. These set of facts also support the inference that although Merritt was cognizant his drunk driving posed a significant risk of death to others, he simply did not care because he drove in an intoxicated state once again in August 2016. While the facts and circumstances of his prior convictions were undoubtedly prejudicial in a broad sense, they were also highly probative.

In giving these facts and circumstances their maximum reasonable probative force and the minimum reasonable prejudicial value, *Henthorn*, 864 F.3d at 1256, we do not find the district court committed a clear error in judgment by admitting this evidence. We recognize the assessment of the probative value of the proffered evidence and the simultaneous weighing of any factors counseling against admissibility "is a matter first for the district court's sound judgment" under Rule 403. *United States v. Abel*, 469 U.S. 45, 54 (1984). Under this fact-intensive Rule 403 balancing inquiry, we cannot say the district court abused its considerable discretion.[4]

---

[4] Alternatively, Merritt contends in his opening brief that any probative value of this evidence was also "substantially outweighed by the risk that the jury would be confused about how to determine Mr. Merritt's mental state, or misled about the proper use of the 404(b) evidence." Aplt. Br. at 35. But Merritt failed to specifically make this argument below. Generally, criminal defendants can only seek review of arguments not raised to the district court under the plain error standard. *See Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1129 (10th Cir. 2011). However, neither in his opening brief nor his reply brief did Merritt attempt to show how this argument

**B. Admissibility of the November 2016 Incident**

Merritt also argues the district court erred in allowing the government to present evidence of his November 2016 drunk driving arrest, which occurred after the August 3, 2016 drunk driving incident that killed Cecil Vijil. *See* Aplt. Br. at 24–26, 34. He argues that evidence of this subsequent act had no relevance to his prior mental state and that the potential for prejudice of this particular evidence was extreme.

In requesting admission of this subsequent act, the government argued this arrest was relevant because Merritt's intent was at issue in this case. *See* ROA Vol. I at 98–99. According to the government, that Merritt "would drive drunk while on bond for a drunk driving offense in which he killed someone, and while under court order not to drink, [spoke] volumes about [his] extreme indifference." *Id.* at 100. And it was this same extreme indifference to serious risk of death or serious bodily harm which the government needed to prove to establish malice aforethought.[5]

Recognizing that Merritt's intent during his August 2016 accident was to be the central issue of the trial, the district court found Merritt's November 2016 incident was relevant. What resonated with the district court were the similarities between the subsequent act and his August 2016 crash. *See* ROA Vol. I at 156–57.

---

survives the plain error standard. The failure to do so "surely marks the end of the road for an argument for reversal not first presented to the district court." *Id.* at 1131 (citation omitted).

[5] Below, the government also requested admission of this subsequent act to help prove Merritt caused the collision in August 2016. Because Merritt does not challenge causation on appeal, we merely note this fact.

On appeal, the government argues that the November 2016 arrest demonstrates Merritt "did not act with a more innocent mental state" during his August 2016 accident. Aple. Br. at 23. Relying on "the doctrine of chances," the government argues "the existence of other, similar acts makes it less likely that a defendant committed the charged act with an innocent (or less culpable) mental state." *Id.* at 24. So "while a single event might have an innocent explanation, the defendant's act takes on an entirely different light . . . in the context of other misdeeds." *Id.* (internal quotation marks and citation omitted). And that is why, according to the government, it does not matter that this November 2016 arrest occurred after the charged act. Instead of relying on the improper inference that Merritt has a propensity to drive while intoxicated, this probability theory, the argument continues, gives rise to the idea that because Merritt "has been involved in similar incidents so often," it is "objectively unlikely" that Merritt drove with an innocent mental state in August 2016. *Id.* at 28–29 (internal quotation marks and citation omitted).

In *Henthorn*, we described this doctrine as "merely one name to call a common sense observation that a string of improbable incidents is unlikely to be the result of chance." 864 F.3d at 1252 n.8 (internal quotation marks and citation omitted). Although our court has never formally adopted this doctrine, we have acknowledged it in upholding the relevance of prior acts evidence to prove intent in the charged case. *Id.* (citation omitted).

Rule 404(b), by its very terms, does not distinguish between "prior" and "subsequent" acts. And in *United States v. Davis*, we explained: "[w]e have

21

consistently 'recognized the probative value of uncharged acts to show motive, intent, and knowledge, whether the acts involved previous conduct or conduct subsequent to the charged offense, as long as the uncharged acts are similar to the charged crime and sufficiently close in time.'" 636 F.3d 1281, 1298 (10th Cir. 2011) (quoting *United States v. Zamora*, 222 F.3d 756, 762 (10th Cir. 2000)). In accordance with this principle, we have long upheld the admissibility of subsequent acts evidence for a variety of purposes. *See, e.g.*, *Davis*, 636 F.3d at 1299 (evidence of subsequent drug related arrest properly admitted under 404(b) to prove knowledge and lack of mistake or accident); *United States v. Mares*, 441 F.3d 1152, 1158–59 (10th Cir. 2006) (evidence of subsequent drug arrest properly admitted under 404(b) to prove defendant's general knowledge, lack of mistake or accident, and to rebut defendant's version of events); *Zamora*, 222 F.3d at 762 (evidence of subsequent robbery properly admitted under 404(b) to prove knowledge, state of mind, and lack of mistake or accident).

But today, we need not decide whether the "doctrine of chances" or Rule 404(b) properly supported admission of evidence pertaining to the November 2016 arrest, nor do we consider more generally whether the district court abused its discretion by admitting such evidence. Instead, we conclude that any error in the admission of evidence pertaining to the November 2016 arrest was harmless. Because Merritt does not argue there is constitutional error, the allegedly erroneous admission of evidence is subject to harmless error review. *See United States v. Griffin*, 389 F.3d 1100, 1104 (10th Cir. 2004). Under this analysis, an error is

22

harmless "unless it had a substantial influence on the outcome or leaves one in grave doubt as to whether it had such effect." *Id.* (quoting *United States v. Mejia-Alarcon*, 995 F.2d 982, 990 (10th Cir. 1993)) (internal quotation marks omitted). In answering this question, we review the record de novo to determine whether the evidence of Merritt's November 2016 arrest had a substantial influence on "the jury's verdict in the context of the entire case against him." *United States v. Short*, 947 F.2d 1445, 1455 (10th Cir. 1991) (citation omitted).

"When the evidence against a defendant is overwhelming, an erroneous admission of [subsequent] convictions is harmless—especially when the trial court issues a proper limiting instruction."[6] *United States v. Caldwell*, 589 F.3d 1323, 1334 (10th Cir. 2009) (citations omitted). Given the overwhelming evidence of guilt in the record stemming from Merritt's 2012, 2014, and August 2016 incidents, we conclude that any error in admitting his November 2016 arrest did not have a "substantial influence" on his second-degree murder conviction.

As described above, evidence from Merritt's 2012 and 2014 convictions support the inference that in August 2016, he was aware his drunk driving posed a

---

[6] Here, the district court issued a proper limiting instruction when each officer testified about Merritt's other acts. *See* ROA Vol. VI at 758–59 ("During the testimony of this witness, you have heard evidence of other alleged crimes, bad acts, or wrongs allegedly committed by Mr. Merritt. You may consider that evidence only as it bears on whether Mr. Merritt acted, in this case, with malice aforethought and no other purpose. Of course, the fact Mr. Merritt may have previously committed an act similar to an act charged in this case does not mean that he necessarily committed any act charged, and you are so instructed."); *see also id.* at 723, 746–47, 765–66, 796–97.

serious risk of death or serious bodily harm to others. Whether it was driving the wrong way on the highway in 2012—thereby forcing numerous drivers to halt or pull off onto the shoulder—or his inability to walk straight or coherently speak after excessive drinking in 2014, Merritt "knows *better than most* that [driving while intoxicated] is not only illegal, but entails a substantial risk of harm to himself and others," *Tan*, 254 F.3d at 1210 (internal quotation marks and citation omitted). The district court, as we conclude above, did not abuse its discretion in allowing the jury to hear evidence of the 2012 and 2014 convictions.

It is within this context that the jury heard evidence of the charged offense at issue in this appeal, the August 2016 arrest. On August 3, 2016, Merritt was traveling with alcohol in his car and driving against traffic almost entirely in the wrong lane when the vehicles collided. When one of the officers approached Merritt, she observed Merritt's eyes were bloodshot and his speech was slurred. The alcohol also affected Merritt's balance—he was unable to walk in a straight line. His blood alcohol level was later determined to be between .23 and .25 at the time of the crash, well above the legal limit of .08.

Critical to our harmlessness finding is that malice aforethought was clearly established at trial prior to the introduction of any evidence of Merritt's November 2016 arrest. We find that the evidence of his *past* convictions coupled with the facts and circumstances of his August 2016 arrest unequivocally support the jury's finding that Merritt acted with malice aforethought when he killed Cecil Vijil. Accordingly, any error in admitting evidence of Merritt's November 2016 arrest would not have

24

had a substantial effect on the outcome of Merritt's conviction. In light of the evidence, we have no doubt, much less "grave doubt," that the jury's verdict would have been the same even if evidence of Merritt's November 2016 arrest had been excluded.

## IV. CONCLUSION

For the reasons explained above, we AFFIRM Merritt's second-degree murder conviction.