**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ADRIANNE CELLICION,

    Defendant - Appellant.

No. 20-2101
(D.C. No. 1:18-CR-03987-MV-1)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MORITZ**, **BALDOCK**, and **EID**, Circuit Judges.
_____

Adrianne Cellicion was convicted by a jury of one count of kidnapping in

Indian country in violation of 18 U.S.C. §§ 1201(a)(2) and 1153, and one count of

carjacking in violation of 18 U.S.C. § 2119. She appeals her convictions, arguing

that the district court abused its discretion in admitting evidence of other bad acts

under Federal Rule of Evidence 404(b). Exercising jurisdiction pursuant to

28 U.S.C. § 1291, we affirm.

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously to honor the parties' request for a decision on the briefs without oral
argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore
submitted without oral argument. This order and judgment is not binding precedent,
except under the doctrines of law of the case, res judicata, and collateral estoppel. It
may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1
and 10th Cir. R. 32.1.

## I. Background

### A. The Kidnapping and Carjacking of Nathaniel Perry

Cellicion did not dispute at trial that she was present when the victim of the charged offenses, Nathaniel Perry, was bound, blindfolded, and chained to a tree. Rather, she disputed the extent of her role in what occurred.

Perry testified that Cellicion had not paid him for a gun he sold to her. He picked her up in his car on the morning of September 3, 2018, in Gallup, New Mexico. She was carrying a backpack when she got into the passenger-side front seat of Perry's car. He believed he was giving Cellicion a ride so that she could either pay him for the gun or return it to him. Cellicion also mentioned to Perry that she was moving. Perry accepted Cellicion's offer of methamphetamine and ultimately took seven hits off of a meth pipe while they were driving around that morning.

Cellicion directed Perry to drive to various places including two motels, a gas station, and a laundromat. When she went into the laundromat, Perry looked inside Cellicion's backpack to see if she had the gun. There was no gun in the backpack, but Perry saw clothing, glasses, and duct tape. At the first motel they visited, they picked up a man named "P.J." who Perry had not met before. P.J. got into the back seat of Perry's car, behind Cellicion. They drove to another motel where Cellicion went inside one of the rooms while P.J. and Perry stayed in the car. About 20 minutes later, Cellicion came out of the motel room with a second man by the name of "Lucky" who Perry also did not know. Perry understood that Lucky knew the

2

location of Perry's gun. Cellicion got back into the front passenger seat of Perry's car, and Lucky sat behind Perry.

Lucky directed Perry to drive south from Gallup toward Zuni. After driving for about eleven or twelve miles, Perry saw in his rearview mirror that Lucky was putting on a camouflage ski mask. Reaching over the back of the driver's seat, Lucky put a metal chain around Perry's neck and began choking him. As Perry struggled, he lost control of the car and it stalled. After turning the car off, Cellicion wrapped duct tape around Perry's forearms and his lower legs while Lucky continued to choke him with the metal chain. Someone covered Perry's head with a scarf secured with duct tape, but Perry could still see through holes in the scarf and could hear what was happening.

Perry was pulled out of his car onto the ground. Cellicion was also out of the car. Perry heard her giving directions and also heard the sound of a gun racking. Perry was dragged across the ground and chained and duct taped to a tree. Cellicion removed Perry's belt and used it to further secure him to the tree. The trio took Perry's shoes, cellphone, wallet, and smartwatch. Perry heard three car doors slam before they drove away in his car.

Perry was able to free himself from the chains and duct tape that bound him to the tree. Leaving the restraints on the ground, he ran for help. A car stopped to pick him up and drove him back to Gallup. When the occupants of that car would not dial 911 for him, Perry became concerned and he jumped from the car at a traffic light. He ultimately found a police officer in Gallup and reported what had happened.

3

Perry directed the officer back to the place where he had been chained to the tree. That location was near two abandoned structures that were over a hill and down a dirt road from the main road. The police found metal chains, pieces of duct tape, and a belt near the tree. The officer then took Perry to the hospital where pictures were taken of the visible injuries to his neck and arm.

Continuing his investigation, the police officer located Perry's car in the parking lot of a motel in Gallup. The officer arrested Cellicion, who was standing next to the car. Inside Perry's car, police officers found clothing and other belongings that were not his. They also found Perry's social security card, driver's license, and debit card inside one of the motel rooms. While Cellicion was seated in the back of a patrol car with Lucky's girlfriend, a camera recorded Cellicion talking about tying the owner of the car to a tree and stating that they were about to head out of town when they all got caught.

Cellicion did not testify. She challenged Perry's credibility based on various theories, including his consumption of a substantial amount of methamphetamine on the day he was kidnapped. Defense counsel argued that she played no active role in the kidnapping and carjacking and was merely associated with the violent men who committed the crimes.

## B.    Evidence of Other Bad Acts

Before trial, the government sought to admit evidence of Cellicion's prior bad acts under Rule 404(b). It argued this evidence was admissible to show her intent and absence of mistake—that she meant to commit the kidnapping and carjacking and

4

was not simply in the wrong place at the wrong time. The government further argued that the Rule 404(b) evidence was relevant to Cellicion's motive and plan, specifically her need to obtain a car to flee from the jurisdiction after being questioned regarding her role in two previous crimes. Alternatively, the government contended that the evidence was intrinsic to the charged offenses because it provided context for why Cellicion wanted to steal Perry's car. Over Cellicion's objection, the district court held the evidence was admissible under Rule 404(b) for the purposes outlined by the government. The court alternatively held that the evidence was admissible as intrinsic to the charged offenses. In either case, the court concluded that, under Federal Rule of Evidence 403, the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.

At the close of its case, the government presented evidence regarding the death of Roger Johnson. A police officer testified that Johnson's body was found wrapped in a blanket in the backseat of his car on February 27, 2018, about six months before Perry was kidnapped. A surveillance video showed a person getting out of the passenger side of a white car, entering a gas station, and attempting to use Johnson's debit card at the cash register. After identifying the person in the video as Cellicion, the officer interviewed her on August 29, 2018, less than a week before Perry's kidnapping. Cellicion stated that Johnson had picked her up in a white car the day before his body was found. She admitted she had seen Johnson wrapped in a blanket and not moving in the backseat of the white car on February 27. And she told the

5

officer about trying to use Johnson's debit card. The investigation into Johnson's death remained open at the time of Cellicion's trial in this case.

The government next presented evidence regarding the death of Kale Holten. A police officer testified that he interviewed Cellicion regarding that case on August 15, 2018, less than three weeks before Perry's kidnapping. She stated that she and two men decided to seek revenge against Holten after Holten sexually assaulted her. They lured him to a motel room with a ruse about purchasing methamphetamine. When Holten entered the room, Cellicion directed him to the bathroom where he was severely beaten by the two men. Holten was then tied up with rope and duct tape and kept in the motel room for two to three days. Cellicion unsuccessfully attempted to use Holten's credit and debit cards to obtain cash. She used his food stamp card to purchase food. At some point while Cellicion and the men were restraining Holten on the motel bathroom floor, she put her knee on his head and heard a pop. She stated that was when she believed that Holten had died. Cellicion and her boyfriend rolled Holten's body in a tarp, placed him in a shopping cart, and put his body in a dumpster next door to the motel. The police later found human remains at a landfill, including two hands bound with rope and duct tape. The investigation into Holten's death remained open at the time of Cellicion's trial in this case.

The district court instructed the jury twice—before admission of the evidence and before closing arguments—that they could consider the evidence of other acts engaged in by Cellicion only as it bore on her motive, intent, plan, absence of mistake, or accident, and for no other purpose. The court further instructed that "the

6

fact that Ms. Cellicion may have previously committed an act similar to the one charged in this case does not mean that Ms. Cellicion necessarily committed the act charged in this case."  R., Vol. 3 at 274.

## II.    Discussion

On appeal, Cellicion argues the district court erred by admitting evidence related to her role in the Johnson and Holten cases because it was unduly prejudicial under Rule 403.  We review that evidentiary ruling for an abuse of discretion, considering the record as a whole.  *See United States v. Smalls*, 752 F.3d 1227, 1236 (10th Cir. 2014).  In applying this standard, we will not reverse a district court's ruling "unless we have a definite and firm conviction that [it] made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances." *United States v. Merritt*, 961 F.3d 1105, 1111 (10th Cir. 2020) (brackets and internal quotation marks omitted).

The district court held that the other acts evidence was admissible both under Rule 404(b) and as intrinsic to the charged offenses.[1]  Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."  Rule 404(b)(1).  But such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent,

---

[1] Cellicion acknowledges the district court's ruling that the evidence was admissible under Rule 404(b).  She does not mention the court's alternative ruling that the evidence was admissible because it was intrinsic to the charged offenses. But we read her Rule 403 objection and argument as pertaining to both of the court's bases for admitting the evidence.

7

preparation, plan, knowledge, identity, absence of mistake, or lack of accident."  Rule

404(b)(2).  In determining whether evidence is admissible under Rule 404(b), we

consider four factors:

> (1) the evidence must be offered for a proper purpose; (2) the evidence
> must be relevant; (3) the trial court must make a Rule 403 determination of
> whether the probative value of the similar acts is substantially outweighed
> by its potential for unfair prejudice; and (4) pursuant to [Federal Rule of
> Evidence] 105, the trial court shall, upon request, instruct the jury that
> evidence of similar acts is to be considered only for the proper purpose for
> which it was admitted.

*Smalls*, 752 F.3d at 1237 (internal quotation marks omitted).  We have said that

Rule 404(b) "is one of inclusion, rather than exclusion, unless the evidence is

introduced for the impermissible purpose or is unduly prejudicial."  *Id.* (internal

quotation marks omitted).  An uncharged act may also be admissible if it is intrinsic

to the charged offenses.  *See United States v. Ford*, 613 F.3d 1263, 1267 (10th Cir.

2010) ("Evidence of other crimes should not be suppressed when those facts come in

as *res gestae*—as part and parcel of the proof of the offense charged in the

indictment." (internal quotation marks omitted)).

Cellicion contends that the evidence of her other bad acts was unduly

prejudicial and should have been excluded under Rule 403, which provides:  "The

court may exclude relevant evidence if its probative value is substantially outweighed

by a danger of one or more of the following:  unfair prejudice, confusing the issues,

misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

evidence."   "Evidence is unfairly prejudicial if it makes a conviction more likely

because it provokes an emotional response in the jury or otherwise tends to affect

adversely the jury's attitude toward the defendant *wholly apart* from its judgment as to [her] guilt or innocence of the crime charged." *Merritt*, 961 F.3d at 1115 (internal quotation marks omitted). For evidence to be excluded under Rule 403, the danger of undue prejudice "must *substantially* outweigh" its probative value when the evidence is given "its maximum reasonable probative force and its minimum reasonable prejudicial value." *Id.* (internal quotation marks omitted). The exclusion of relevant evidence under Rule 403 "is an extraordinary remedy and should be used sparingly." *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (internal quotation marks omitted).

In its balancing analysis under Rule 403, the district court held that, given the many proper purposes for which it could be admitted, the significant probative value of the other bad acts evidence was not outweighed by undue prejudice. It noted the presentation of the evidence would be relatively short and narrowly tailored to convey only necessary information. In particular, it would not include explicit testimony or images concerning the condition of the victims' bodies. The court further concluded that a limiting instruction would curtail any risk the evidence would be used by the jury for an improper purpose.

In a two-paragraph argument, Cellicion asserts that the danger of unfair prejudice from the other acts evidence admitted in this case "can hardly be overstated." Aplt. Br. at 12. This is so, she argues, because the evidence involved her active participation in crimes that were far more sensational and disturbing than the harm inflicted on Perry. In particular, she characterizes the facts of the Holten

9

case as "exceedingly sadistic and brutal." *Id.* She therefore contends that the probative value of the evidence with regard to her intent and absence of mistake[2] was vastly outweighed by the undue tendency of the evidence to suggest a decision on an improper emotional basis.

We agree with the district court that the evidence regarding Cellicion's involvement in the Johnson and Holten cases was substantially probative of her intent and absence of mistake in this case, particularly given her defense that she was merely present while violent men committed the crimes. Like the charged offenses, the earlier incidents both involved incapacitation of the victims and theft of their debit cards. The Holten incident also involved male accomplices and the use of duct tape to restrain the victim. And the Johnson case also involved use of the victim's car. Moreover, the evidence of Cellicion's recent interviews by police regarding the two incidents was also substantially probative of her motive and plan to flee the jurisdiction using Perry's car.

Cellicion does not argue otherwise. She also does not directly challenge the district court's specific reasons for concluding that the substantial probative value of the other acts evidence was not outweighed by undue prejudice. We agree with the government that the evidence presented regarding the Johnson and Holten cases was neither sensationalized nor prolonged and was narrowly tailored to address the necessary issues. The admission of the other bad acts evidence was "a matter first for

---

[2] She does not mention the other proper purposes for which the evidence was admitted.

10

the district court's sound judgment under Rule 403," and "we cannot say the district court abused its considerable discretion" in exercising that judgment. *Merritt*, 961 F.3d at 1116 (internal quotation marks omitted).

## III. Conclusion

The district court's judgment is affirmed.

Entered for the Court


Allison H. Eid
Circuit Judge