**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

**April 24, 2025**

**Christopher M. Wolpert**
**Clerk of Court**

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ELIJHA DEWAYNE TAYLOR,

    Defendant - Appellant.

No. 24-7085
(D.C. No. 6:23-CR-00058-KS-1)
(E.D. Okla.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **PHILLIPS**, and **McHUGH**, Circuit Judges.
_____

Elijah Dewayne Taylor was convicted of first-degree murder in Indian country

and discharging a firearm during and in relation to a crime of violence.  At trial, the

Government introduced recordings of Mr. Taylor's phone calls from jail to friends.

On appeal, Mr. Taylor argues the court should have excluded those calls under

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to honor the parties' request for a decision on the briefs without oral argument.  *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G).  The case is therefore submitted without oral argument.  This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Federal Rules of Evidence 401, 403, and 404(b).  Exercising jurisdiction under

28 U.S.C. § 1291, we affirm.

## I.  BACKGROUND

### A.  *Factual History*

Mr. Taylor was indicted in the Eastern District of Oklahoma on charges of

murder in Indian country, in violation of 18 U.S.C. §§ 1111(a), 1151, and 1153; and

discharging a firearm in the course of a crime of violence, in violation of 18 U.S.C.

§ 924(c)(1)(A)(i), (ii), and (iii).[1]

While in pretrial custody, Mr. Taylor made a series of recorded calls to

friends.  In these calls, Mr. Taylor stated he did not know the murder victim and

claimed not to have been at the scene of the murder—an apartment in a Muskogee,

Oklahoma building—on the day in question.  Three months before trial, Mr. Taylor

said in a recorded video call, "I shot a [unintelligible]," and then laughed.  ROA,

Vol. III at 361; ROA, Supp. Vol. I, Ex. 33 at 00:19-00:23.

### B.  *The Trial*

At trial, two eyewitnesses who were in the apartment at the time of the murder

testified that they heard a gunshot from the next room and saw Mr. Taylor standing

over the victim with a gun.  A third eyewitness testified she saw Mr. Taylor enter the

---

[1] Mr. Taylor was also indicted and convicted of causing the death of a person in the course of a violation of 18 U.S.C. § 924(c), proscribed by 18 U.S.C. § 924(j)(1).  The Government moved for dismissal of this count at sentencing, which the court granted.

apartment and then leave immediately after she heard the gunshot. Surveillance footage also showed Mr. Taylor entering the apartment before the murder and exiting afterwards.

The Government sought to introduce the five jail calls. Mr. Taylor objected on relevance and unfair prejudice grounds. Defense counsel agreed Mr. Taylor's purported confession in the video call was "perhaps . . . admissible" as an inculpatory statement, ROA, Vol. III at 178, but argued his other statements should be excluded because they were made to friends who had "no way to exculpate him." *Id.* at 179.

The district court overruled the objections. It said Mr. Taylor's exculpatory statements were relevant to his "credibility" and "passed the 403 balancing test." *Id.* at 183-84. It did not address the inculpatory statement. The calls were played for the jury, which returned guilty verdicts.

## II.  DISCUSSION

On appeal, Mr. Taylor argues the district court erred in admitting his jail calls. We reject Mr. Taylor's arguments and affirm.

### A. *Standard of Review*

We review challenges to a district court's admission of evidence for abuse of discretion. *United States v. Woody*, 45 F.4th 1166, 1178 (10th Cir. 2022); *United States v. Griffin*, 389 F.3d 1100, 1103 (10th Cir. 2004). "Under this standard, we will not disturb a trial court's decision unless we 'have a definite and firm conviction that the trial court made a clear error of judgment or exceeded the bounds

of permissible choice in the circumstances.'" *United States v. Merritt*, 961 F.3d 1105, 1111 (10th Cir. 2020) (brackets and quotations omitted).

Even if we determine the district court abused its discretion by admitting certain evidence, we will not reverse a conviction "if the error was harmless to the defendant." *United States v. Kupfer*, 797 F.3d 1233, 1243 (10th Cir. 2015). "The government bears the burden to show that a nonconstitutional error is harmless by a preponderance of the evidence." *United States v. Roach*, 896 F.3d 1185, 1195 (10th Cir. 2018). "A non-constitutional error, such as a decision whether to admit or exclude evidence, is considered harmless 'unless a substantial right of a party is affected.'" *United States v. Chavez*, 976 F.3d 1178, 1204 (10th Cir. 2020) (brackets and quotations omitted); *see* Fed. R. Crim. P. 52(a). "In conducting a harmless error review, we review the record *de novo*," *United States v. Flanagan*, 34 F.3d 949, 955 (10th Cir. 1994), considering the "jury's verdict in the context of the entire case," *United States v. Short*, 947 F.2d 1445, 1455 (10th Cir. 1991).

B. *Legal Background*

1. **Federal Rules of Evidence 401, 402, and 403**

Evidence is relevant if it tends to make any fact of consequence in a case "more or less probable." Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. But relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

4

"The term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

"'The district court has considerable discretion in performing the Rule 403 balancing test,' but 'exclusion of evidence under Rule 403 that is otherwise admissible under the other rules 'is an extraordinary remedy and should be used sparingly.'" *United States v. Silva*, 889 F.3d 704, 712 (10th Cir. 2018) (quotations omitted); *United States v. Otuonye*, 995 F.3d 1191, 1206 (10th Cir. 2021).

### 2. Federal Rule of Evidence 404(b)

Rule 404(b) prohibits the admission of evidence of "any other crime, wrong, or act" to show a defendant's propensity to commit bad acts. Fed. R. Evid. 404(b)(1). "Although . . . 'propensity evidence' is relevant, the risk that a jury will convict for crimes other than those charged—or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment—creates a prejudicial effect that outweighs ordinary relevance." *Old Chief*, 519 U.S. at 181 (quotations omitted).

### 3. False Exculpatory Statements

"Although false exculpatory statements 'cannot be considered by the jury as direct evidence of guilt,' such statements 'are admissible to prove circumstantially consciousness of guilt or unlawful intent.'" *United States v. Davis*, 437 F.3d 989, 996 (10th Cir. 2006) (quoting *United States v. Zang*, 703 F.2d 1186, 1191 (10th Cir. 1982)).

C. *Analysis*

1. **Exculpatory Statements**

The district court did not abuse its discretion in admitting the first four calls, which could circumstantially show Mr. Taylor's consciousness of guilt. He asserted innocence after he knew of the murder charge. Other trial evidence showed his statements in the calls were false.[2] Mr. Taylor initiated the calls and, as the district court noted, almost certainly knew jail calls were monitored and recorded. The statements not only were probative but also raised no danger of unfair prejudice. Finally, the court properly instructed the jury that Mr. Taylor may have had reasons, "fully consistent with innocence," for making the statements. ROA, Vol. I at 323.

Mr. Taylor argues, without citation to authority, that false exculpatory statements must be made to law enforcement—someone capable of exculpating the defendant—to be relevant and admissible. *See* Aplt. Br. at 12. He provides no support for this novel theory, and the case law shows otherwise. *See, e.g.*, *United States v. Porter*, 745 F.3d 1035, 1054 (10th Cir. 2014) (stating that false bank statements defendant sent to an employees union to conceal her wire fraud evidenced her guilt); *see also United States v. Dawkins*, 999 F.3d 767, 794 (2d Cir. 2021) (stating that the jury instruction for false exculpatory statements "is most often

---

[2] Mr. Taylor does not contest that the statements were false. *See* Aplt. Br. at 8, 11-12.

(though not only) given when a defendant made false pretrial statements to law enforcement officers").[3]

We thus find no abuse of discretion in the court's admission of the exculpatory calls.

2. **Inculpatory Statement**

Mr. Taylor contends his inculpatory statement was "inadmissible propensity evidence." Aplt. Br. at 11. He argues that, because the statement did not clearly identify a particular victim, it "only led the jury to believe that the defendant was a killer in general," which "fails the 403 balancing test as a matter of law." *Id*. At trial, however, Mr. Taylor raised no propensity objection and instead objected only on general relevance grounds.[4]

When an appellant at trial "objected on [a] different ground [than on appeal], we review the trial court's evidentiary rulings for plain error only." *Denison v. Swaco Geolograph Co.*, 941 F.2d 1416, 1422 (10th Cir. 1991). "Plain error is

---

[3] Even if these statements were less probative because Mr. Taylor did not make them to law enforcement, the court informed the jury it could determine any weight and significance of the statements. *See Zang*, 703 F.2d at 1191 ("The judge fully instructed the jury on the use of such evidence; therefore, it was for the jury to weigh the testimony and the evidence and determine whether the false exculpatory evidence indicated a consciousness of guilt or nothing at all.").

[4] At the pretrial conference, Mr. Taylor appeared to concede the statement's relevance as an inculpatory statement. ROA, Vol. III at 178 ("[T]o be quite candid and frank," the statement that Mr. Taylor shot someone "would fall into the inculpatory [category]," and "perhaps . . . is admissible for that reason . . . . I can see that the government can probably bring [it] in . . . .").

'(1) error, (2) that is plain, which (3) affects substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Bagby*, 696 F.3d 1074, 1084 (10th Cir. 2012) (quotations omitted); *see* Fed. R. Crim. P. 52(b).

Mr. Taylor has not shown error, let alone plain error. The inculpatory statement was not propensity evidence. It connected him to the charged crime. Three months before his murder trial, he said from jail that he shot someone. The statement matched the offense's circumstances. The prosecution offered it as direct evidence that Mr. Taylor committed murder, which "does not fall within the ambit" of propensity evidence under Rule 404(b)(1). *United States v. Green*, 175 F.3d 822, 831 (10th Cir. 1999); *United States v. Record*, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989) ("Rule 404(b) only applies to evidence of acts extrinsic to the charged crime."). We are not left with a "definite and firm conviction that the [trial] court made a clear error of judgment or exceeded the bounds of permissible choice in the[se] circumstances." *Merritt*, 961 F.3d at 1111 (quotations omitted).

3. **Harmless Error**

Even if the district court abused its discretion by admitting one or more of the calls, any error was harmless. The other trial evidence of Mr. Taylor's guilt was overwhelming: two eyewitnesses who were in the apartment testified to hearing the gunshot from the next room and seeing Mr. Taylor standing over the victim holding a gun. Testimony from a third eyewitness and surveillance footage placed him at the apartment when the murder occurred and showed him exiting shortly after a gunshot

8

was heard.  *See, e.g.*, *United States v. Smith*, 534 F.3d 1211, 1220 (10th Cir. 2008) (finding any error in admitting evidence harmless because the "remaining evidence against [the defendant] was so strong").

## III.  CONCLUSION

We affirm.

Entered for the Court

Scott M. Matheson, Jr.
Circuit Judge